STATE OF MARYLAND, use of JAMES W. DITTMAN, Administrator de bonis non cum testamento annexo of WILLIAM GREGORY vs. JOHN · ROBINSON and THOMAS W. CAMPBELL.

*Pleading and Practice—Suit on a Testamentary Bond— Defective Declaration under Art. 93, sec. 243, of the Code—Demurrer—Construction of a Will—Bills Receivable—Fund in which a person is entitled to a Life Estate, to be Invested under Order of Court, the Life Tenant to draw Income only—Art. 93, sec. 10, of the Code—Additional Testamentary Bond—Art. 91, sec. 2, of the Code.*

The will of W. G., admitted to probate the 29th November, 1865, contained these items: 1. I will and bequeath to my wife, S. G., all the household furniture and fixtures, and the cash money in hand, and the bills receivable of which I shall die possessed, for her own absolute benefit, behoof and disposal. 2. He then gives to his wife a leasehold lot on Hollins street, in Baltimore City, and two leasehold lots on Baltimore street, together with the improvements, rents, issues and profits thereof, all to be held and enjoyed by her during her life. The third, fourth and fifth clauses of the will directed the mode of disposition, after his wife's death. W. G. within sixteen months before his death, and after making his will, sold the lots on Baltimore street; and a part of the purchase money due at his death, was collected by his executors, his wife, S. G., and· J. B. G., (who received letters testamentary, and filed their bond, approved,) and invested in U. S. bonds. On the 3rd May, 1872, another testamentary bond with other securities, J. R. and T. W. C., was filed and approved, the letters already granted not being revoked and new ones granted. J. B. G. died, and on the 12th January, 1878, S. G. filed her only administration account. Subsequently her letters were revoked, and J. W. D. (the equitable plaintiff,) was appointed administrator *d. b. n. c. t. a.*, and was by order of Court directed to put in suit the bonds of the executors. The *narr.* did not aver the passage of the order. It alleged the probate of the will, the grant of letters testamentary,

State, use of Dittman, Adm'r *vs.* Robinson and Campbell.

and the execution of the bond sued on of the 3rd May, 1872. In assigning the breach, it alleged the return of an inventory of the estate of W. G., consisting in part of money, and of U. S. bonds, and of leasehold property, amounting to $6000. It alleged an order of the Orphans' Court for a sale of the leasehold property, its sale for $3600; the transfer to the purchaser; the death of J. B. G.; the accounting by S. G., whereby $5313.74 appeared as remaining in her hands as due the estate. It alleged the petition of persons interested in the estate, that G. S. be ordered to bring the assets into Court, and the answer of S. G. admitting her inability and refusal so to do; the subsequent revocation of her letters, and the grant of letters to J. W. D. as administrator *d. b. n. c. t. a.* It alleged an order on the late executrix, S. G., to deliver up the assets to J. W. D., and her failure to comply. It then alleged the conversion of the assets to their own use by the late executors, and failure to discharge their duties. The defendants, S. G. and her sureties, J. R. and T. W. C., pleaded performance; and two additional pleas, 1st. That prior to the giving of the bond sued on, S. G. and J. B. G. had given other securities upon another bond still in force, and the appointment of the executors being unrevoked, and no demand for counter security, the bond sued on was given. 2nd. That S. G. was not required by law to bring in the assets of the estate, because by W. G's will, she was entitled to all the assets absolutely, except the proceeds of the Hollins street leasehold property, to which she was entitled as life tenant. To this second additional plea, the plaintiff demurred. The Court below overruled the demurrer, the case was tried, and on exceptions by the plaintiff, it was HELD:

1st. That the demurrer compelling to a critical examination of the *narr.*, it was found to be defective in not averring the order of Court directing the suit on the bond, as required by Art. 93, sec. 243, of the Code.

2nd. That the truth of the facts pleaded, interposed no bar to recovery; for to the extent that S. G. was not absolutely entitled to the funds in her hands as legatee under the first clause of the will, it was her duty to have caused the funds to be invested under order of Court, she to receive the benefit of a life estate therein; this independently of Art. 93, sec. 10, of the Code.

3rd. That S. G. took the proceeds of the Baltimore street property, sold by W. G., and received by the executors, and invested by them in U. S. bonds absolutely, under the provision in the first

State, use of Dittman, Adm'r *vs.* Robinson and Campbell.

clause of W. G's will, relating to "bills receivable of which I shall die possessed"—and that she had merely a life estate in the proceeds from the sale of the Hollins street property, under the second clause of the will.

4th. That the bond of the 3rd May, 1872, being approved by the Orphans' Court, and taken by it under Art. 91, sec. 2, of the Code, (which section does not contemplate that revocation of letters shall precede or accompany the giving of such bond, but designs to provide additional or other security for the performance of duty under those letters,) the fact that it did not appear affirmatively that the Orphans' Court demanded this bond of the executors, could not avail to defeat the suit.

5th. That in fine, recovery could not be had for anything beyond the proceeds of the sale of the Hollins street property; nor should the plaintiff recover interest thereon, S. G., as life tenant, being entitled to the income therefrom; that these proceeds should be invested under order of Court, and S. G. allowed the interest during her life, the principal to go to those entitled under the will, after her death.

APPEALS from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial, the plaintiff offered the following prayers:

1. That if the jury shall find from the evidence, the bond sued upon to have been given, and that at the date of the administration account given in evidence, the surviving executrix had, or ought to have had in her hands the amount due to the estate of her decedent, or thereby ascertained, then the plaintiff is entitled to recover the said amount, with such interest as the jury may give their verdict, however, not exceeding the penalty of the said bond.

2. That if the jury find as stated in the aforegoing prayer, then in any event the plaintiff is entitled to a verdict for the amount of such balance as they may find,

less the amount of sales of the house devised to her for life, and also less one-third of the then residue as her widow's share, with such interest as the jury may think proper to give.

And the defendants offered the following prayers :

1. If the jury find from the evidence in the cause, that Susan Gregory, the surviving executrix of William Gregory, passed her administration account on the 12th January, 1878, and charged herself as tenant for life, with the sum of $5963.39, being the balance due in her hands, and that said account passed the Orphans' Court, then from that date she held the said sum of money as life tenant under the terms of the will of her husband, and the plaintiff is not entitled to recover in this case.

2. If the jury find, that on the 29th November, 1865, the Orphans' Court of Baltimore City, granted letters testamentary on the estate of William Gregory, to Susan Gregory and John B. Gregory, the executors named in the will of said Gregory, and that said executors gave the bond required by law, and that afterwards, to wit: on the 3rd May, 1872, the said Court granted letters testamentary to the said Susan and John B. Gregory, on the same estate, without any revocation of the former letters, and that said executors gave the bond now sued on, the plaintiff is not entitled to recover.

3. That there is no evidence to show that the said William Gregory died intestate, as to any property that came at any time after his death into the hands of said Susan Gregory, and that said Susan Gregory was not under the will given in evidence, bound to bring into Court for distribution, any money that came into her hands at any time as such executrix, and their verdict must be for the defendants.

The Court, (GILMOR, J.,) granted the first and second prayers, and refused the third prayer of the defendants, and rejected those of the plaintiff. The plaintiff excepted,

and the verdict and judgment being for the defendants, the plaintiff appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*George Hawkins Williams*, for the appellant.

The demurrer was well taken : Because the plea tenders no traverse, does not confess or avoid, and tenders no issue. It states a fact with no pretence of any legal conclusion from it that defendants rely upon, and the fact, if. true as stated, is immaterial to the averments of the declaration.

The plaintiff's first prayer should have been granted, because until an estate is actually administered, it is within the power and jurisdiction of the Orphans' Court; the executrix, by her account, admitting the balance to be in her hands, the Court had a right, of its own motion, to order it to be brought in, and to revoke her letters upon her disobedience, and the successor in office had the right to demand it, and under the orders of the Court, to sue the bond on refusal. And the second prayer asked for much less than plaintiff was entitled to have, and the account was *prima facie* evidence of the amount as against the sureties. *State vs. Gunther,* 31 *Md.,* 33.

The whole matter being properly within the jurisdiction of the Orphans' Court, any error in its order would be corrected upon appeal, and cannot be inquired into collaterally. *Edelen vs. Edelen,* 6 *Md.,* 288, 295 ; *Raborg vs. Hammond,* 2 *H. & G.,* 42; *Fudge vs. State,* 3 *G. & J.,* 114; *Wilson vs. Ireland,* 4 *Md.,* 448.

The defendants' first prayer is erroneous on this, that supposing the tenant for life to be entitled to the custody of money for life, yet it is a violation of duty for an executor to pay to a tenant for life, without taking security for the protection of the remainder-man. *Evans vs. Igle-*

State, use of Dittman, Adm'r *vs.* Robinson and Campbell.

*hart,* 6 *G. & J.,* 196–7; *Miller vs. Williamson,* 5 *Md.,* 119; *Wooten vs. Burch,* 2 *Md. Ch. Dec.,* 199.

The defendants' second prayer is erroneous, because the action of the Court was not and did not pretend to be a revocation of former letters, but a repetition *de novo,* of the same letters to the same persons, and the taking of a new and additional bond as security for faithful administration, was strictly within its powers. *Rev. Code, Art.* 50, *sec.* 69, *p.* 445.

And defendants having voluntarily proffered and executed this bond, and the Court having accepted and approved it, they are estopped from denying anything recited in it; and all presumptions are that the Court has properly exercised its powers. *Ex parte Shipley and Wife,* 4 *Md.,* 497; *Fudge vs. State,* 3 *G. & J.,* 103; *Laurenson vs. State,* 7 *H. & J.,* 339, 343; *State vs. Horner,* 34 *Md.,* 569, 573; *Milburn vs. State,* 1 *Md.,* 12; *Billingsley vs. State,* 14 *Md.,* 375; *Hamilton vs. State,* 32 *Md.,* 352; *Burgess vs. Lloyd,* 4 *Gill,* 191; *Same vs. Same,* 7 *Md.,* 178; *Hardy vs. Coe,* 5 *Gill,* 189.

*W. C. N. Carr* and *Wm. Pinkney Whyte,* for the appellees.

The first question arises upon the demurrer to the defendants' second additional plea, which demurrer was overruled by the Court below. The defendants are not advised as to the true ground upon which the demurrer is based, and relying upon the validity of the defence set up in that plea, submit the matter to the Court upon the face of the pleadings.

There can be no doubt that the bond executed by the defendants, and approved by the Court, was inoperative and void. No such bond should have been accepted. Letters testamentary were granted on the 29th November, 1865, to Susan Gregory and John B. Gregory, by the Orphans' Court, and a bond given with John A. Mitchell

and William C. Gent, as sureties for the executors. This bond was still in force, with no application from any source, asking for counter or other security, and it was not in the power of the Orphans' Court to take an additional bond. Its jurisdiction is limited, and having exhausted it by approving the first bond, in the absence of an application for counter security, it had no authority to exact or accept additional security. So long as the first letters testamentary were unrevoked, the bond first given remained in full force. The revocation of the first letters testamentary was essential before the issue of second letters could be justified; and the mode of securing such revocation, and the causes which justify such revocation, are fully set out in the Code.

The granting of the defendants' second prayer was correct. It is clear that Susan Gregory was entitled, absolutely, to all the estate of the late William Gregory, under his will, except the leasehold property, in which she had a life estate; and that the first prayer of the defendants was properly granted, inasmuch as the plaintiff could have no possible claim against her during her life.

The plaintiff's second prayer being the converse of the proposition contained in defendants' second prayer, was properly refused. When the executrix settled her account in the Orphans' Court, all of the personal property passed to her, absolutely, and the leasehold passed to her for enjoyment, as a life tenant, and the testamentary bond was discharged. *Ellicott vs. Early*, 3 *Gill*, 439: *Binnerman vs. Weaver*, &c., 8 *Md.*, 524; *Hewlett, use, &c. vs. Hewlett, et al.*, 48 *Md.*, 144.

The sale of the leasehold property by order of the Orphans' Court was illegal and beyond its jurisdiction.

The plaintiff's first prayer did not, at all, state the true condition of the case, was misleading to the jury, and left out of view most of the material facts in the case, and was properly refused.

IRVING, J., delivered the opinion of the Court.

There are two appeals in this record, but the first was merged in the second, and but one opinion is needed. The record shows, that on the 29th of November, 1865, letters testamentary *c. t. a.* were granted by the Orphans' Court of Baltimore City to Susan Gregory and John B. Gregory, upon the estate of William Gregory, and a testamentary bond with securities was executed, approved and filed; and that on the 3rd of May, 1872, another testamentary bond with other securities upon the same estate was executed, approved by the Court and filed by the same executors. When this bond was taken, letters of administration already granted were not revoked, and new ones granted; and it does not appear, except by inference, from the bond's approval, that it had been required by the Court. John B. Gregory, one of the executors, died, and on January 12th, 1878, Susan Gregory, surviving executrix, filed her only administration account. Subsequently, her letters testamentary were revoked, and James W. Dittman (the equitable plaintiff in this suit,) was appointed administrator *de bonis non c. t. a.* of Wm. Gregory, and was by order of the Orphans' Court directed to sue the *bonds* of the executor. This suit was brought in pursuance of that order.

The declaration alleges, the probate of Wm. Gregory's will, the grant of letters testamentary to the executors, John B. Gregory and Susan Gregory, and the execution of the bond sued on, dated the third day of May, 1872, which is fully set out. In assigning the breach, it is alleged, that the executors returned an inventory of the estate and assets of the deceased, "which consisted in part of money and of certain bonds issued by the United States Government, commonly called seven-thirty bonds, and of certain leasehold property," amounting to six thousand dollars. It alleges, an order of the Orphans' Court for a sale of the leasehold property upon the appli-

cation of the executors ; its sale for thirty-six hundred dollars ; the transfer of the same to the purchaser ; the death of John B. Gregory ; the accounting by the surviving executrix in the Orphans' Court, whereby $5313.74 appeared as remaining in her hands due the estate. It alleges, the petition of persons interested in the estate praying that the executrix be ordered to bring the assets into Court, and the answer of Susan Gregory, executrix, admitting her inability to do so, and her refusal to do so ; the subsequent revocation of her letters, and the grant of letters to the equitable plaintiff as administrator *de bonis non*, with a copy of the will annexed. It alleges, an order on the late executrix to deliver up by a specified day to the equitable plaintiff as administrator *de bonis non*, and her failure to comply with the order. It then alleges, the conversion of the assets to their own use, by the late executors, and total failure to discharge their duty whereby action had accrued.

The defendants pleaded performance—and afterwards two additional pleas—1st, that prior to the giving the bond now sued on, the executors, Susan and John, had given other securities upon another bond, which bond being still in force, and the appointment of the executors being unrevoked, and no demand for counter security, the bond sued on was given. 2ndly, that the executrix, Susan Gregory, was not required by law to bring in the assets of the estate, because, by the will of Wm. Gregory, referred to in the declaration, she was entitled to all the assets absolutely, except the proceeds of the Hollins street leasehold property, to which she was entitled as life tenant.

To this second additional plea, the plaintiff demurred, and being overruled, the first question for review is presented by it. Notwithstanding the truth of the facts pleaded, which the demurrer conceded, they interposed no bar to recovery ; and the learned Judge, erred in suppos-

ing they did, and therefore overruling the demurrer. Judge DORSEY, speaking for this Court, in *Evans vs. Iglehart*, 6 *G. & J.*, 196, says: that "where the surplus bequeathed for life consists of money or property, whose use is conversion into money, it is the *duty* of the executor to invest the same in some productive fund, or it must be put out on adequate securities, and most properly under the direction of the Orphans' Court, or a Court of equity, so that the dividends or income may be received by the legatee for life, and the principal, after the death of the legatee for life, may be received by the legatee in remainder." Chancellor JOHNSON, in *Wootten vs. Burch*, 2 *Md.*, 190, says: it "is no longer an open question in Maryland, that such is the law." These decisions make no reference to the Act of 1798, ch. 101, sub-ch. 10, sec. 11, which has been codified as sec. 10, of Art. 93, of the Code, of Public General Laws; but seem to put the decision upon the general duty devolving upon the executor with reference to the property in his hands so bequeathed, and to which his assent was necessary to perfect the title. *Miller and Mayhew vs. Williamson*, 5 *Md.*, 219, recognizes this as the law, where executors hold funds bequeathed for life, and then over in remainder. It makes no reference to the Act of 1798, but relies on the decisions just cited. It would seem as if that sec. of 1798, ch. 101, had not been regarded as imposing the obligation, but had been enacted for other contingencies; and that this duty existed independent of its provisions. The case of *Rieman vs. Peters and Wife*, 2 *Md.*, 104, is rested on that section; but the circumstances of that case, were different from this, and from the other cases cited. In that case, an annuity was directed to be paid the widow, during life or widowhood, in monthly payments, from testator's decease, and made the whole reside of the estate liable for that charge, and further directed the executors to keep the the estate "together," for the purpose of carrying out his

wishes, thus bringing it within the provisions of ch. 101, sub-ch. 10, sec. 11, of the Acts of 1798, which is now sec. 10, of Art. 93, of the Code of Public General Laws. In *Hewlett's Case,* 48 *Md.,* 142, this Court determined that the will created a charge on the property bequeathed, and the duty imposed by sec. 10, of Art. 93, did not devolve upon the executor; and that section did not apply.

If the decisions in *Evans vs. Iglehart,* and *Wootten vs. Burch,* had been placed upon the provisions of that section, it would be clear that the definition of the meaning of that section, given by the Court in *Hewlett's Case,* was inconsistent with those cases, and was too restricted. But in view of all the decisions, we think the statement in *Hewlett's Case,* of the meaning of that section was correct; and that this case does not fall within it, and is not controlled by it. The rule of duty which is to be applied in this case, exists independent of sec. 10, Art. 93, and is distinctly stated in *Evans vs. Iglehart.* It is a rule which requires the executor to protect the interests of the legatee in remainder, by procuring an investment of the fund to be enjoyed for life by one, with remainder over to another, so that the legatee for life may receive the income, and the legatee in remainder, ultimately and certainly may come into the enjoyment of the fund. *Williams on Executors,* 7th *Edition,* (*English,*) 1390–1396; *Howe vs. Lord Dartmouth,* 7 *Vesey,* 137.

To the extent, that Susan Gregory was not absolutely entitled to the funds in her hands as legatee under the first clause of the will, it was her duty to have caused the funds to be invested; and if the same were not invested, but remained in her hands, or had been misapplied or squandered, the new administrator *d. b. n. c. t. a.* properly clothed with authority to sue, could recover from her and her securities, for the purpose of doing what the removed administrator had neglected to do. The overruling of the demurrer to the plea, thus pleaded, (which conjoined

the absolute rights of Susan Gregory, and her life interests in the same plea,) would have been error, if the declaration of the plaintiff had been free from infirmity. The demurrer compels us to a critical examination of the *narr.*, and we find it defective in omitting a fact absolutely necessary to the plaintiff's right to sue. It is alleged in the *narr.* that the executrix who was removed, was ordered to pay over to the administrator *de bonis non c. t. a.* the funds in her hands, and she refused to do so. But it does not state that the Orphans' Court directed this suit to be brought on her bond. This was a fatal omission, no matter what the fact might be. Sec. 243, of Art. 93 of the Code, which provides for the appointment of a new administrator upon the revocation of letters already granted, provides for the order to deliver up, which is alleged in the *narr.*; and also provides the mode for enforcing obedience. It authorizes "an attachment and sequestration" from the Court, and says the Court "*may also* direct to be put in suit the administration or testamentary bond of such executor or administrator whose letters have been revoked." It gives no right to the newly appointed administrator to sue of his own accord. The Court was authorized *to direct it,* if necessary. The attachment and sequestration might make that unnecessary. If the administrator had the right to exercise his judgment about it, he might be prosecuting a suit, while the Court was pursuing the party by attachment and sequestration of his property. That he had no right to sue without such order, has been expressly decided by this Court in the case of *Thomas R. Johnson, Adm'r d. b. n. of Rinaldo Johnson vs. Farmers' Bank of Maryland and others,* 11 *Md.*, 412. In *Dorsey vs. The State, use of Pannell,* 4 *G. & J.*, 477, this Court said, "whatever is necessary to give a plaintiff a right to sue must be averred in the declaration; and it is not sufficient to show it in evidence alone, as recovery must always be had on the plead-

ings." "Otherwise he does not show that which is a pre-requisite to his title to sue, and without which he cannot be *rectus in curia*. It is just as necessary as an averment of performance of a condition precedent is in a declaration in an action upon a covenant." In that case there was an omission, in the *narr.* of a creditor in a suit on the administration bond, to state that there had been a *non est* against the administrator in his county, or a *nulla bona* on a *fi. fa.* on judgment against him, which the statute required to justify a suit on the bond. This case is entirely analogous. The statute gives to the Orphans' Court power to direct the payment over, by the removed administrator to the new one, and to enforce obedience by order of sequestration, attachment for contempt, and to direct suit on the bond.

In *West vs. Chappell*, 5 *Gill*, 228, the Court, in construing this Act of Assembly determined that it did not vest the title in the newly appointed administrator (*d. b. n.*,) nor give him the right of possession without an order of the Orphans' Court. The case of *Johnson, Adm'r d. b. n. &c. vs. Farmers' Bank of Maryland*, 11 *Md.*, already cited, decides that the right to bring an action for the recovery of the property, depends entirely on the order of the Orphans' Court. In the case of *The State, use of James B. Green, Adm'r d. b. n. of Arthur McCourt vs. Emily A. Hart, Ex'x of Samuel Hart, p. 234 ante*, there was a demurrer to the declaration because of the omission to allege in the *narr.* the order of the Orphans' Court to pay over ; and this Court said it was a fatal omission. As we have already stated, the Court was to determine how that order was to be enforced, and the methods of enforcement were set out in the statute. The direction of suit on the bond was one of those methods at the command of the Court. But the administrator *d. b. n.* could not resort to it without the Court's order ; therefore, for the reason set out by the authority of the cases cited, it was

necessary to allege an order of the Court to sue, in the *narr*. It appears in the evidence that such order was in fact obtained; but the case was tried on demurrer first, and it did not then appear, as it ought to have done in the pleadings. Appellant's counsel evidently thought it was so alleged. He so states in his brief in this Court; but inspection shows he was in error. Upon a remand of the cause, which will be ordered, leave to amend can be obtained before the new trial proceeds.

It appears from the bill of exceptions, that it was in evidence, the executors had filed an inventory shortly after administration, amounting to $5363.39. The inventory included a house and lot, (leasehold property,) on Hollins street, appraised at $3000, and $2000 of U. S. bonds, proceeds of leasehold property sold by testator in his life-time, and after making his will, the purchase money of which in part remained unpaid at his death, and was collected by the execu'ors, and invested in these United States bonds. It was also in evidence, that the Hollins street property was sold by the executors under an order of the Orphans' Court for $3600, which sale was ratified by the Court; also account of Susan Gregory, surviving executrix, dated 12th January, 1878, which concludes thus: *"Balance due the estate,* consisting of, viz., $2000 U. S. 7-30 bonds—cash due as interest by F. T. Miller, $56.00, purchase money from sale of Hollins street house, sold under order of Court, of May 4th, 1872, $3600; total $5656.00—less cash advanced by this accountant $342.26, $5313.74." The order revoking her letters, the order to pay over to new administrator, her admission of inability to pay, the order to sue, and will of William Gregory were all put in evidence. There was no distribution.

The plaintiff offered two prayers, which were rejected; and the defendants offered three, two of which were granted, and the third rejected. The exceptions bring up for

review the rejection of the plaintiff's, and the granting of first and second prayers of the defendants. The first prayer of the defendants ought not to have been granted. The theory of the prayer was wrong as we have shown, in what we have said in disposing of the questions raised by the plea demurred to. It was, however, wrong in another particular. It treated the whole balance in the hands of the executrix as belonging to her for life, and was a construction of the will of William Gregory, in a way which we think is not sound. By the first item of the will he says: "I will and bequeath to my wife, Susan Gregory, all the household furniture and fixtures, and the cash money in hand, and *the bills receivable, of which I shall die possessed*, for her own absolute benefit, behoof and disposal." . By the second item, he gives to his wife, the leasehold house and lot on Hollins street, and two leasehold lots on the north side of West Baltimore street, all to be enjoyed, together with the improvements, rents, issues and profits thereof, during her life. The third, fourth and fifth clauses direct the mode of disposition after his wife's death. The testator, in his lifetime, (within the sixteen months he lived after making his will,) sold the lots on Baltimore street, and a part of the purchase money remained due at his death, and was collected by the executors, and invested in the United States bonds mentioned in the accounts. The question is therefore raised, whether the proceeds of that sale passed to the wife absolutely, under the first clause of the will; or whether, as the Court below seemed to think in granting the defendants' first prayer, that the money took the place of the lots, and was to be enjoyed by the wife for life; or whether as to that there was an intestacy.

We do not think the testator designed to die intestate of anything. His making a will demonstrates that he did not so desire; and a fair construction of his will does not so require. Under our statute, a will speaks as of the

the day of a testator's death. Here, the testator evi-dently contemplated the possibility of his having other money and other *bills receivable*, than those then in hand, when he died; and he says with respect to the money and *bills receivable*, which he gives to his wife, that it is such as "*I shall die possessed of.*" Will "bills receivable" embrace the amount due from the sale of the leasehold property, at the time of his death? If so, she was enti-tled to that absolutely. By fair construction did he so intend? If he had received cash for the property, and had put that in his desk with his other money, it would scarcely have been contended, that under the first clause of the will, this money would not pass to the wife.

Being money due him, and embraced within the legal meaning of bills receivable, we know of no rule by which she shall be denied a right to it. *Bouvier*, in his *Law Dictionary, Vol.* 1, *p.* 181, defines "Bills receivable" to be "*promissory notes, bills of exchange, bonds,* and other evidences or securities, which a merchant or trader holds, and which are payable to him." *Abbott's Law Dictionary, p.* 146, says "they are the assets, (in commercial paper,) of a business man, of *an estate,* &c., and bills *payable are the debts.*" "Bills" in these phrases, are not always con-fined to bills of exchange, or even formal written evidences of debt—but may mean- demands generally, claims or obligations." Thus it is seen that bills receivable are made to mean the converse of bills payable, or debts to be paid. If there was anything in the will to indicate an intention to restrict the term within a narrower compass, it might no doubt be done to carry out a manifest purpose of the testator. Here there is nothing of the kind in the will. He either intended it to pass to his wife absolutely, or he must be held to have died intestate of it; for we cannot substitute one thing for another devised to be enjoyed specifically. The leasehold property sold by the executors by order of the Court, was devised to be enjoyed

State, use of Dittman, Adm'r *vs.* Robinson and Campbell.

as such for life, and then was devised over.  By selling it in his life-time, he has created the controversy about it. If it be held that he dies intestate of that, it will be doing violence to the natural presumption ; and it is not at all unreasonable to suppose that he left his will unchanged, with the design of giving his wife under the first clause, these proceeds of sale.  He is presumed to know the meaning of the language he has employed ; and having made no change in his will, he must be presumed to have intended the result which that language would bring about.  As the law affords us a mode of settling the question, without ascribing any purpose to him, other than it intends he may have had, we must adopt it.  By it, the money value of a part of what he gave his wife for life, in the second clause, is only enlarged into an absolute gift, subject to no limitation over.  A supposition by no means unreasonable, looking to the regard he had for her, as indicated by the will.  This view not only affects the prayers of the defendants, but those of the plaintiff also, which we will consider presently.

The second prayer of the defendants presents the question raised by the first addional plea, and cannot be sustained.

The bond on which this suit was brought, was taken by the Orphans' Court, under the power which is given to the Court by the second section of Art. 91, of the Code.  That section gives power to the Orphans' Court, to call on any executor or administrator to give new security approved by said Court.  The first section of the Article provides for counter security when asked for; but the second section gives the Court authority of its own motion, to call for a new bond.  It does not contemplate that revocation of letters shall precede or accompany the giving of such bond ; for it makes revocation of letters a penalty for refusing to comply with the demand.  It does not contemplate the disturbance of the letters already granted ; but

State, use of Dittman, Adm'r *vs.* Robinson and Campbell.

designs to provide additional or other security, for the performance of duty under those letters. It was giving to the Orphans' Court the power which is always exercised by Courts of equity, over trustees in that regard; and which is, of constant practice. The fact that it does not appear affirmatively, that the Orphans' Court demanded this bond of the executors cannot avail to defeat the suit. They approved the bond, and in so doing, must be presumed to be approving what they had required. It was a determination, then and there, that it was expedient. It is not reasonable to suppose such bond would have been voluntarily tendered, without demand. Having the right to demand it, and having accepted it; the Court will be presumed to have done all that ought to precede it. It was wholly, and only within their jurisdiction, and all the presumptions are that the Court properly exercised its powers. *Fudge vs. The State*, 3 *G. & J.*, 103; *Ex parte Shipley and Wife*, 4 *Md.*, 497; *Milburne vs. State*, 1 *Md.*, 12; *Burgess vs. Lloyd*, 7 *Md.*, 178; *State vs. Horner*, 34 *Md.*, 569. Whether the first bond was released by the taking of a second, or still remained answerable in any way, is not now before us.

The plaintiff's prayers were properly rejected; but upon a remand of the cause for a new trial, they can easily be made to conform to the requirements of this decision. Recovery cannot be had for anything beyond the proceeds of sale of the Hollins street house and lot, sold by the executors and converted to their own use. Nor will the appellant be entitled to recover any interest thereon. Being a life tenant, the executrix, Susan Gregory, was entitled to the income therefrom, and must be allowed to have taken that in her right as life tenant. In the hands of the new administrator, it will be subject to investment, under the rule already laid down, for the use of the life tenant during her life, and after her death, for the remainder-men; and the interest already accrued and actu-

ally enjoyed by the life tenant, or supposed to have been, cannot be added so as to swell the fund for investment. Entertaining these views, the judgment must be reversed, and the cause remanded for a new trial.

Inasmuch as the *narr.* was infirm, in the omission of a material allegation, and the judgment on the demurrer to the defendants' second additional plea should have been for the defendants, and the plaintiff will be compelled to amend to obtain judgment, the reversal and new trial must be granted with costs to the appellees.

*Judgment reversed, and cause*
*remanded for a new trial.*

(Decided 20th January, 1882.)