John W. S. Brady, in his own right, as the surviving Administrator with the will annexed of the estate of Samuel Brady, Sr., deceased, and as Trustee under the several trusts of said Will, and as the Administrator of Ann Mary Proctor Brady, deceased, Widow of Samuel Brady, Sr. *vs.* Arunah S. A. Brady, and others. H. Lewis Naylor, and others *vs.* John W. S. Brady, and others. Benjamin F. Brady *vs.* Same. Mary E. Sadtler, Husband and Children *vs.* Same. Helen S. Brady, and others *vs.* Same.

*Will—Nature of Estate—Lapsing and Ademption of Legacies.*

A will devising and bequeathing all of the testator's estate, real, peronal, and mixed, after payment of debts and funeral expenses, to his w.fe for life, with power to receive, take, and collect the rents, issues and profits thereof, and to dispose of the same, in all respects, as she may think proper, and with power, also, to use at her discretion, exchange, dispose of, and renew any of the testator's personal goods and chattels, requisite to the comfort and enjoyment of herself and family, and further, bequeathing, after the expiration of the life estate, a stated sum to a son, his heirs and assigns forever, and distinctly and definitely pointing out its sources of payment, entitles the widow merely to the income of the estate for life, and not to the control of the entire residue.

Where the testator gives a life estate in all his property to his wife, and a legacy to a son after the life estate shall have expired, to be paid within three years after the death of the wife, and the widow makes an advancement to the son in her life-time, the same must be taken as a payment on account of the legacy.

A specific legacy of all the cows of the testator to a son, fails where none of the cows owned by the testator at the date of the execution of his will, are living at the time of his death.

Brady *vs.* Brady, *et al.*

Where power is given by a will to the testator's wife to use and dispose of any of his personal goods and chattels, and she disposed of certain horses. a specific legacy of such horses fails.

A bequest to two of the testator's sons, their heirs and personal representatives, of all the ground rents of which he should die seised and possessed, in trust for the sole and separate use of a daughter of the testator, during her life, vests in the trustees for the benefit of the daughter, all of the ground rents of which the testator died seised, except a rent specifically bequeathed in trust, in another clause of the will.

A devise of a certain lot of ground in trust for a daughter and two sons of the testator, is not adeemed by a subsequent lease of the lot by the testator for ninety-nine years, renewable forever, the reversion continuing in the lessor, subject to the conditions contained in the lease, as such lease only changes the tenure of the estate, and the rent reserved passes under the devise.

Cross Appeals from the Circuit Court of Baltimore City.

These appeals were taken from a decree of the lower Court (Wickes, J.,) construing the will of Samuel Brady, Sr., late of Baltimore County. The case is stated in the opinion of this Court.

The cause was argued before Robinson, C. J., Bryan, Page, Roberts, and McSherry, J.

*W. Cabell Bruce,* and *William A. Fisher,* (with whom was *D. K. E. Fisher,* on the brief,) for John W. S. Brady.

*Randolph Barton, Jr.,* and *Skipwith Wilmer,* for H. Lewis Naylor, and others.

*Osborne I. Yellott,* and *John I. Yellott,* for Benjamin F. Brady.

*Frederick W. Story,* for Mary E. Sadtler, and others.

Brady *vs.* Brady, *et al.*

*Fielder C. Slingluff*, for Helen S. Brady, and others.

ROBERTS, J., delivered the opinion of the Court.

The record in this case brings before this Court for review and determination five appeals taken by various parties in interest from the decree passed by the Circuit Court of Baltimore City. The questions presented by these appeals have been argued together, and will be disposed of as hereinafter indicated. The bill was filed for the purpose of obtaining a judicial construction of certain provisions of the last will of Samuel Brady, Sr., late of Baltimore County. The testator executed his will on the first of November, 1862, and died in December, 1871, and now after the lapse of more than twenty years since his death, doubts have arisen as to the construction proper to be placed upon certain parts of his will.

The bill is filed by John W. S. Brady, in his own right, as the surviving administrator with the will annexed of the estate of Samuel Brady, Senior, and as trustee under the several trusts of said will, and as the administrator of the estate of Ann Mary Proctor Brady, deceased, widow of said Samuel Brady, Senior. The defendants are all the other parties interested in the estate of said testator.

The first questions presented for consideration arise under provisions contained in the first and second clauses of the will, which read as follows:

"Firstly. After the payment of my debts and funeral expenses, I do give and bequeath to my dear wife, Ann Mary Proctor Brady, for and during her natural life, all my estate, real, personal and mixed, with power to receive, take and collect the rents, issues and profits thereof, and the same to dispose of, in all respects, as she may think proper, and with power also to use at her discretion, exchange, dispose of and renew any of my personal goods and chattels requisite to the comfort and

enjoyment of herself and family.    I further give and bequeath unto my said wife, her heirs and assigns forever, my two slaves, Priscilla Jones, and Ann, her daughter, to be by her disposed of by will or otherwise, as to her may seem best for their welfare.    After the said life estate shall have expired, my will is:

"Secondly.  I give and bequeath unto my son, Benjamin Franklin Brady, now in California, and his heirs and assigns forever, the sum of sixteen thousand dollars, ($16,000,) to be paid to him or them within three years after the death of my wife, said sum to be provided for as follows, to wit:    Firstly, the cash on hand belonging to the estate, as far as the same will suffice; secondly, the money realized from the payment or sale of promissory notes, and the sale of my Baltimore City stock, and other stocks and mortgages, and other securities, which I hereby authorize and direct shall be sold for that purpose; thirdly, all the money I have loaned my son, John William S. Brady, to be devoted to said fund; and fourthly, the proceeds of sale of my Pimlico Road farm, which I also will and direct shall be sold, the whole or so much of the above as may be necessary to be devoted to the payment of the said sum of sixteen thousand dollars, hereby devised to my son Benjamin, his heirs and assigns forever; and this devise is intended to be his entire share of my estate, and to except him as co-heir to the balance."

After the death of the testator, letters of administration, *cum testamento annexo,* were granted to John W. S. Brady and Samuel Brady, Jr., who qualified and proceeded with the settlement of the estate.    On December 17th, 1872, they passed an account in the Orphans' Court of Baltimore County, by which the entire residue of the personal estate, after paying debts, funeral expenses and costs of administration, was distributed and delivered over to the testator's widow.    It appears from

the testimony that the entire supervision of this residue, and also of the real estate of which the testator died seized, was, at the instance and on behalf of the widow, taken by her son Samuel Brady, Jr., who continued to give his attention to it, until his death, which occurred December 30th, 1890. The testimony shows that all of the Baltimore City stock, all of the Franklin Bank stock, and three shares of the Frederick Turnpike stock were sold, and the proceeds delivered to the widow. Mrs. Brady, the widow of testator, died August 3rd, 1892. At the time of her death no part of the residue which had been turned over to her by the administrator remained, except one share of the Chesapeake Bank stock, three shares of Frederick Turnpike stock, the library, certain furniture of small value, and some old farming implements. The balance of the residue had been, by the widow, either consumed, lost or destroyed through use and decay, or applied in payment of taxes and other expenses on the real estate of the testator, which was largely unproductive. The widow had also advanced out of said residue to testator's son, Benjamin, the sum of seven thousand dollars, on account of the legacy of sixteen thousand dollars which had been bequeathed to him. Since the death of Samuel Brady, Jr., in December, 1890, his widow, Helen S. Brady, has sold the farming implements for the sum of eighteen dollars, the furniture has been in part sold and partly divided, by consent of the parties interested, and the library remains to be delivered to the parties entitled under the will.

The question now arises as to whether the personal representatives have made such disposition of the residue of the personal estate of their testator as was contemplated by him; and secondly, was the testator's widow entitled to receive said residue, and treat it as if the items constituting the same, and the title thereto,

vested absolutely in her. These questions whilst not entirely free from difficulty are, we think, easy of solution. We think the testator never intended to authorize his personal representatives to deal with the residue of his personal estate in the manner in which they have, nor did he have it in contemplation that his widow was ever to have any such dominion over said residue as she has asserted. In seeking to ascertain the testator's intention, recourse should be had to the entire will, otherwise a very narrow and unnatural construction will follow, utterly at variance with the objects sought to be accomplished by the testator, *and the true* meaning of his testament. Taking the provisions of the first and second clauses of this will, it is clear, beyond all doubt, that in the first instance the testator intended to make "provisions requisite to the comfort and enjoyment of his widow and family;" and in the second, in equally clear and express terms, to bequeath as a legacy to his son Benjamin, the sum of sixteen thousand dollars. The first and second clauses should be read together, for the reason that neither is capable of proper construction, without the aid of the other; but, considered together, proper regard being had to the provisions generally of the whole will, there does not appear to be much difficulty in ascertaining the testator's true meaning. Yet we do not think that the first clause, taken by itself, admits of any such construction as that which governed the conduct of the administrators in turning over the residue of the personal property to the widow. The testator says: "After the payment of my debts and funeral expenses, I do give and bequeath to my wife Ann Mary Proctor Brady, for and during her natural life, all of my estate, real, personal and mixed, *with power to receive, take and collect, the rents, issues and profits thereof,* and the same to dispose of in all respects as she may think proper;" therefore the power "to receive,

take and collect," can by no possibility refer to anything more than the *rents*, *issues* and *profits* of the whole estate. These the widow is empowered "to dispose of in all respects as she may think proper." Then follows the words, "and with power *also* to use at her discretion, exchange, dispose of, and renew any of my personal goods and chattels, requisite to the comfort and enjoyment of herself and family." Here we have an absolute control over the rents, issues and profits of the entire estate, and only a power in her discretion to exchange, dispose of, and renew the "goods and chattels," to an extent requisite to the comfort and enjoyment of herself and family. It is proper here to remark that a power conferred must not be confounded with an estate conveyed. The power of the widow to use and enjoy the life estate is broad and comprehensive, but not sufficiently so to change the character of the estate which she took under the will. The power to use confers no authority to consume or destroy, unless a reasonable use is the consumption or destruction of the subject of the bequest. If, however, any doubt could be entertained as to the testator's intention, respecting the estate which his widow took, reference need only be had to the provisions of the second clause of the will, which is preceded by these suggestive words: "And after the said life estate shall have expired my will is;" then follows the clause in which provision is made in express terms for a legacy of sixteen thousand dollars to be paid to testator's son Benjamin, his heirs and assigns forever, within three years after the death of the widow. The legacy is clearly demonstrative in character, and its sources of payment are distinctly and definitely pointed out, and the testator, in the latter part of the second clause, says that, "this devise is intended to be his (Benjamin's) entire share of my estate, and to except him as co-heir to the balance." Like restrictions will be found in

various clauses of the will, and notably the twelfth, imposed by the testator upon the interest which Benjamin takes under the will.

The items of account which go to make up the residue of the personal property turned over to the widow by the administrators, as declared by the inventory, list of debts, and the account, are mainly those which the testator had dedicated to the payment of Benjamin's legacy, and were not intended to be destroyed or consumed by their use or appropriation by the widow. The terms employed by the testator in creating this legacy not only point out the funds from which it shall be paid, but they indicate in the plainest manner how the funds themselves shall be applied. When he names the first class he says, "the cash on hand belonging to the estate, as far as the estate will suffice;" he does not however refer to any balance remaining unspent or undisposed of, but a fund, the issues and profits of which should go to the widow during life, and at the expiration thereof, the cash on hand at the time of his death to be applied in payment of the legacy so far as the same may be sufficient for the purpose. In no part of this testament is there any reference to a sale of stocks, mortgages, promissory notes and other securities, save that which is to be found in the second clause; and after referring to them, he says, "which I hereby authorize and direct shall be sold for the purpose of supplying a fund from which Benjamin's legacy shall be paid." Here he gives a clear and distinct assertion of his wishes and intentions, and it appears to us difficult to misconceive or misconstrue them. The second clause then continues: "Thirdly, all the money I have loaned my son John W. S. Brady, *to be devoted to said fund;*" and "fourthly, the proceeds of sale of Pimlico Road Farm," which, however, the testator, after executing his will, sold, and the legacy as to this fund became and was

thereby adeemed.    If the construction contended for by the appellant in the first of these appeals, be the one proper to be applied, that is to say, that the course pursued by the administrators in turning over said residue to the widow, was in accordance with the true meaning of the testator, and that the widow was authorized to dispose of said residue, as stated, then the testator in putting into his testament the second clause thereof, acted without proper motive, and in an unmeaning manner in providing for a legacy which, by a preceding clause, he indicated should never be paid.    But if he was prompted, as we think he was, by a worthy motive, and was seriously seeking the discharge of what he considered a duty to his son Benjamin, in providing a fund from which said legacy was to be paid, then he only intended that his widow should receive, take and collect the rents, issues and profits of his entire estate for and during her natural life, with power to exchange, dispose of, and renew his personal "goods and chattels."    In the use of the term "goods and chattels," we think it clear that the testator did not mean to include therein any property which, by the language of the second clause, he has provided shall constitute part of the funds from which Benjamin's legacy is to be paid."    With this restriction upon the term, it is entitled to its usual legal signification.    In the construction of the first and second clauses of the will, we have been referred to no authority bearing upon the subject, nor have we thought it necessary to sustain our views by reference to many authorities, as, in our opinion the language of the will itself supplies all that is requisite to guide us in ascertaining the testator's meaning.    The question is not however a new one.    In *Constable vs. Bull*, 3 *DeGex & Smale*, 411, the language of the will was: "I give, devise and bequeath unto my dear wife, Mary Ann Constable, all and every my estate and effects, goods, chat-

tels, houses, lands, moneys, etc., and wheresoever the same may be at the time of my decease, for her sole, separate use and benefit. I further give, will and direct that at the decease of my said wife, whatever remains of my said estate and effects shall go to, and be equally divided, share and share alike, between the following persons hereinafter named," etc. It was held that this gave only a life estate to the widow.

Again, in the case of *Bibbens vs. Potter, L. R.*, 10 *Ch. Div.*, 733, Emily Bibbens, by her will, gave her sister, Ann Maria Bibbens, all her estate and effects, both real and personal, for her own use and benefit, absolutely. By a codicil made afterwards, and directed to be taken as a part of her will, she added: "After the death of my sister, Ann Maria Bibbens, I give, devise and bequeath all property of mine, which may then be remaining to," etc. The VICE-CHANCELLOR held, that construing the will and codicil together, the gift to Ann Maria was cut down to a life estate. And in *Goudie, et al. vs. Johnston, et al.*, 109 *Indiana*, 427, the language of the will was: "I give, grant and bequeath to my wife for her use during her natural life-time, all the rest and residue of my estate, real and personal, not mentioned in item No. 1 of this will, she to have the control and management of the same, and at her death, all of said personal estate remaining," &c., "shall go to and be equally divided among my grandchildren," &c. The Court held that the controlling words of the will were, "for her use during her natural life-time," and that there were no other words of equal power in the instrument. In the case of the *Rhode Island Hospital Trust Co. vs. Commercial Bank*, 1 *N. E. Reports*, 20, the Supreme Court of Rhode Island was called upon to construe the will of Mrs. Burnside, by which she devised and bequeathed all her property, real and personal, to her husband, General Burnside, for life, "with full

power and authority, at pleasure, to sell, transfer and convey any portion of my personal property and estate, execute the requisite conveyances thereof, receive the proceeds of any such sale or sales, and apply and appropriate the net proceeds thereof to and for his own use, benefit and behalf forever.'' All the estate of the testatrix remaining at the decease of General Burnside, is given to her mother for life, and then to other persons and charities.

DURFEE, C. J., delivering the opinion of the Court says: ''We think, however, that where in a will the gift to a first taker is expressly limited to him for life, it is not enlarged into an absolute gift by the mere annexation of a power to him to dispose of or appropriate the fee or capital, at least when the power is only a power to dispose of or appropriate the fee or capital during his life; for, as has been well said, 'An express bequest of an estate for life negatives the intention to give the absolute property, and converts the superadded right of disposition into a mere power.' '' *Denson, et al. vs. Mitchell and Wife,* 26 *Ala.,* 360.

We are constrained to hold in this case that the administrators have wholly misapprehended their duty in transferring to the widow the residue of the personal estate, and in allowing her to use and consume it as she has; but they should, with the restriction we have imposed as to the '' goods and chattels,'' have invested said residue, or have retained the investment, as made, if safe and reliable, so as to secure the issues and profits to the widow for life, and the principal after her death to pay Benjamin's legacy, and thus have fulfilled the design of the testator as expressed in his testament. If the administrators had complied with the provisions of Article 93, section 10, of the Code, they would have found complete protection, and have followed the plainly expressed intention of the testator. The advancement of seven

thousand dollars made to Benjamin by the widow in her life-time must be taken to be paid on account of his said legacy, and when a proper accounting shall be had by and between the said Benjamin, and the surviving administrator, according to the views herein expressed, and the first, second and third source of payment of said legacy, pointed out by the testator in the second clause of his will, shall fail to yield a sum sufficient to discharge said legacy after deducting said advancement, then the unpaid balance is wholly lost to said Benjamin and there remains no fund from which it can be paid.

It results necessarily from what we have said that if, as we think the records shows, the whole personal estate was worth $19,315.63, and we deduct therefrom the household and farming chattels, valued at $3,656.85, and also the debts and expenses of the settlement of the estate, amounting to $3,646.59, there remains the sum of $12,105.09, subject to be credited with the sum of $7,000 advanced to Benjamin on account of his legacy, there will yet remain due to Benjamin the sum of $5,105.09 on his legacy, for which the administrator must account to said Benjamin.

If the data contained in the record, to which reference has just been made in ascertaining the balance due Benjamin, should, in the further progress of the cause, be found to be incorrect, such errors will be corrected by the Court below, such data being employed for the sole purpose of illustrating the method by which the balance due on Benjamin's legacy should be ascertained.

We think the record clearly shows that the administrators were, at the time they turned the residue of the personal estate over to the widow, aware that the widow was only entitled to the "issues and profits" of the notes, stocks, and securities during her natural life, of which the testator died possessed, as by their account, they ask to be credited with the same "as sole legatee for and

during her natural life.'' If she was entitled only to a life estate, the testator never could have contemplated their destruction or consumption, especially as he has clearly indicated the purpose which they were intended to subserve.

The only questions presented by the appeal of Helen S. Brady, administratrix of Samuel Brady, Jr., have been correctly disposed of by the Court below. She is entitled to receive the library and the same should be delivered to her. The specific legacy of all the cows of the testator to his son Samuel is lost to said administratrix, for the reason that none of the cows owned by the testator at the date of the execution of his will were living at the time of his death. *Kunkel vs. Macgill, et al.*, 56 *Md.*, 123. The legacy of three good horses to the said Samuel, which were turned over to the widow by the administrators, and by her used or disposed of, and not in existence at the time of her death, was in consequence thereof lost. The horses constituted a part of the ''goods and chattels,'' which the widow was entitled to use, and in their use she was not restricted by any provision contained in the second clause of the will. The farming implements still in existence at the death of the testator's widow, and which he owned at the time of his death, were sold by the said Helen S. Brady, and for them she must as administratrix account as part of the estate of her decedent. The farming implements were a specific bequest to him, and only so far as the subject of the bequest is lost or destroyed does the legacy fail.

We come now to the consideration of the questions which arise in the appeals of H. Lewis Naylor, and others, and of Mary E. Sadtler and others. The controversy here turns upon the construction proper to be placed upon the eighth and ninth clauses of the will.

By the eighth clause, the testator says: ''I bequeath to my sons, John and Samuel, their heirs and personal rep-

resentatives,'' all my ground rents, of which I shall die seized and possessed, in trust and confidence, for the sole and separate use of my daughter Margaretta O. Brady, for and during her natural life,'' etc.   Margaretta O. was unmarried at the date of the execution of the will, and subsequently married Dr. Naylor, and dying, left surviving her, said husband and four children.   We think the Court below has declared the testator's true intent and meaning in the construction placed by it upon the eighth clause of the will, and we concur in holding that all the ground rents of which the testator died seized, passed to the trustees therein mentioned for the benefit of testator's daughter Margaretta O., except the rent reserved on the Caroline street lot.   *Code, Art.* 93, *sec.* 321; *Dalrymple vs. Gamble, et al.,* 68 *Md.,* 528; *State, use of Dittman, Adm'r vs. Robinson and Campbell,* 57 *Md.,* 502; *Oakes vs. Oakes,* 9 *Hare,* 666; *Chase and Postell vs. Stockett and Ridout, Ex'rs, et al.,* 72 *Md.,* 240; *Campbell vs. State, use of Dittman,* 62 *Md.,* 7, note, supplying omission in 57 *Md.,* 502.

We are of opinion that the testator's intentions, respecting the disposition of the Caroline street lot have been expressed in terms that require neither argument nor authority to assist in giving to the same a proper construction, which we think the Court below has correctly announced.   The lot out of which this rent was created, was by the provisions of the ninth clause, devised in trust for the benefit of testator's sons, Jefferson and Thomas, and his daughter, said Margaretta, and the subsequent lease of it, did not have the legal effect of an ademption of the devise.   The lease was for ninety-nine years, renewable forever, and the reversion continued in the lessor, subject to the conditions contained in the lease.   This, of course wrought only a change in the tenure of the estate and the rent reserved passed under the devise contained in the ninth clause.

After careful examination we have found no error in the disposition made by the Court below of other questions argued at the hearing of these appeals, and not discussed in this opinion, and think the Court below has correctly determined the same, but for the reasons herein assigned, we will *reverse* the decree, in so far as it relates to the construction of the first and second clauses of the will, as stated in the first and second paragraphs of the decree, and as to the other paragraphs of the decree, we affirm the same.

It follows that in No 21, the decree must be reversed with costs, and in Nos. 19, 20, 22 and 23, the decree must be affirmed.

> *Decree affirmed in part, and reversed in part, and remanded for further proceedings in compliance with this opinion.*