DECCA S. GILMER ET AL. *v.* LELIA S. ALDRIDGE.
[No. 15, January Term, 1928.]

*Decided April 3rd, 1928.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Frederick W. Brune* and *Edwin F. A. Morgan,* with whom was *Lester H. Crowther* on the brief, for the appellant.

*Joseph S. Goldsmith,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

Lelia S. Bennett by the sixth paragraph of her will devised to Lelia S. Aldridge, the appellee, certain property in Virginia "and also, if owned by me at my death, the two three-story brick houses and lots numbers 1611 and 1615 McCulloh Street, Baltimore, Maryland." She made numerous other devises and bequests and then provided by the twenty-second paragraph: "All the rest of my property of every sort and description, real, personal or mixed, wheresoever located, and however acquired, I give devise and bequeath to Decca S. Gilmer, Willis W. Shackleford, Jennie R. Heath, and George Gilmer, or such of them as may be living at my death, in equal shares."

The four persons named in said residuary clause are the appellants. And the question to be decided is, under which of said two paragraphs the interest testatrix had at the time of her death in the house and lots numbers 1611 and 1615 McCulloh Street, passed. And the question arises out of the following circumstances:

At the time of the execution of her will, on January 22nd, 1917, the testatrix was the owner in fee of said lots, and also of the reversion in and the annual rent of $240 issuing out of the lot known as No. 1613 McCulloh Street. On December 1st, 1917, she acquired the leasehold interest in the last mentioned lot. On August 16th, 1923, she entered into a written agreement with one Abraham Weisman, which took the form of an agreement of purchase and sale of said three lots, "at and for the price of eighteen thousand dollars (being six thousand dollars each), of which $300 have been paid prior to the signing hereof, and the balance is to be paid as follows: Fifty-seven hundred ($5700.00) is to be paid in cash on the day of transfer, and for the balance of the purchase price, the vendor is to retain and accept three annual ground rents, with the usual covenants, of $120 each on each respective lot * * * and also to accept and retain three separate first purchase money mortgages of $2,000 each on respective houses and lots subject to rents above referred to; said mortgages to run for two years from date of transfer and to bear interest at six per cent with usual covenants and insurance of at least two thousand dollars on each house payable to and to be in possession of mortgagee. And upon payment as above of the unpaid purchase money, a deed for the property shall be executed at the vendee's expense by the vendor, which shall convey a good merchantable title to the property to the vendee." The agreement also contains the usual clause in regard to adjusting taxes, water rent to the day of transfer "which is to be within sixty days from the date hereof." It further provides that "time is the essence of this contract."

On November 8th, 1923, a ninety-nine years renewable lease of said three lots in the usual form and with the usual covenants was executed by Lelia S. Bennett and Abraham Weisman as lessor and lessee respectively, in which an annual rent of $120 on each lot was reserved; and on the same day Weisman mortgaged to the lessor his leasehold interest in each of said three lots for $2,000, payable in two years from date. The testatrix retained until her death her titles

to the reversions in fee simple in, and the annual rents of $120 each issuing out of, the lots here in controversy. Between the date when the said leasehold interests and mortgages were created (November 8th, 1923), and the date of the death of testatrix (August 31st, 1925), she made no other conveyances of any kind respecting either of said lots.

On August 19th, 1925, she executed a codicil to her will, having between the date of the original will and of the codicil stricken out several paragraphs in which devises and bequests had been made with the proviso contained in the sixth paragraph, the property in these paragraphs having been disposed of by testatrix in her life time. The devise of the McCulloh Street lots, however, was undisturbed. She also struck out two paragraphs in which she had directed certain things to be done, these things having been done by her in her life time. She also made a number of changes by interlineation. The will, with the cancellations and additions and the codicil, was offered for probate in Virginia, where she died, and the court admitted it in that form as her will. Certified copies of the will and codicil were duly recorded in the office of the Register of Wills of Baltimore City.

This appeal is from a decree, passed in the special case stated, "that the provisions of the sixth paragraph of the last will and testament of Lelia S. Bennett * * * became effective at the time of the death of the said testatrix as to all such right, title, interest and estate, as the testatrix owned at the time of her death, in the lots of ground and improvements thereto, which are therein described as 'two three-story brick houses and lots numbers 1611 and 1615 McCulloh Street, Baltimore, Maryland, * * * and that all such right, title, interest and estate became vested at the time of her death, by virtue of said provisions, in Lelia S. Aldridge, the plaintiff herein, to whom they were thereby devised."

We agree with the conclusion of the learned chancellor. In our opinion that conclusion is supported by *Brady v. Brady,* 78 Md. 461. In that case, as here, the testatrix executed a ninety-nine year lease of a lot after devising it in

her will. The court said: "The subsequent lease of it did not have the legal effect of an ademption of the devise. The lease was for ninety-nine years, renewable forever, and the reversion continued in the lessor, subject to the conditions contained in the lease. This, of course, wrought only a change in the tenure of the estate, and the rent reserved passed under the devise contained in the ninth clause." See also 1 *Jarman, Wills* (6th Ed.), star pages 131 and 132.

It is true, in the *Brady* case the court was dealing with an irredeemable ground rent, while in the case at bar, under a statute since passed, the rent was redeemable in five years. But it was not redeemable *at any time* at the option of the lessee, as in *Bosley v. Wyatt,* 14 How. (U. S.) 390, on which appellants rely, and in which the court held that the interest the testator had in the land at the time of making his will was converted into money by his contract with the lessee. As pertinently suggested by appellee, if that were true of leases created under our present statute, then all ground rents created since the passage of that statute would be personal property. In any event the rents in the present case had not been converted at the time of the death of the testatrix, as the five year period had not then expired. See *Packard v. Corporation for Relief of Widows,* 77 Md. 240, where *Bosley v. Wyatt, supra,* was distinguished. See also *Krieg v. McComas,* 126 Md. 377.

Nor should the conclusion in this case be controlled by the form of agreements which preceded the execution of the lease. What the parties really intended by that agreemnt is apparent from the agreement itself and even more so from the manner in which it was worked out. That agreement promptly became an executed contract and in its execution the testatrix was never for a moment divested of her seisin in the land. Only the form of her tenure was changed, just as in the *Brady* case.

Even if under the agreement, and before the actual execution of the lease, it could be held that there was a conversion, nevertheless, after the lease was executed and at the time of her death, the interest of the testatrix was unquestionably an

interest in realty, and passed as such under the Act of 1849, ch. 229 (section 346 of article 93 of the Code), the will speaking as of the date of the death of the testatrix.

This is not a case in which a court of equity is called upon to uncover hidden illegal designs, as in *Montague v. Sewell*, 57 Md. 407, where there was an attempt to circumvent the usury law, but here, as in the construction of all wills, it is the duty of the court to ascertain, as far as possible, the intention of the testator. It is a cardinal rule that such intention shall prevail, even though, to give it effect, other rules must be disregarded, unless it contravenes some fixed and unbending rule of law or some public policy. Even if what was done by the testatrix, in the matter of the agreement and lease, apart from the other circumstances, would have been, contrary to our view, an ademption of the devise to appellee, that rule would not be applicable where the other circumstances indicated a contrary intention. *State v. Robinson*, 57 Md. 486, 500; *Frick v. Frick*, 82 Md. 218, 223; *Joynes v. Hamilton*, 98 Md. 665.

We have no doubt that the testatrix meant the devise to appellee of the lots in question to remain effective as to any interest she had in them after the execution of the lease. The codicil executed after the transaction has the effect of a republication of the will as it was at the date of the codicil. But, apart from this technical rule, everything that testatrix did in relation to this will indicated that such was her intention. All the paragraphs in which the property therein devised or bequeathed had been disposed of after the date of the will, were cancelled; but paragraph six was left as originally written. Two paragraphs in which certain things had been directed to be done were also cancelled, testatrix having in the meantime done these things herself.

In these circumstances, had the chancellor stricken down paragraph six he would have done what the testatrix deliberately omitted to do.

*Decree affirmed, with costs to appellee.*