ELIZA STANNARD *vs.* AUGUSTUS K. BARNUM, in his
own right and as Executor of DAVID BARNUM,
AUGUSTUS McLAUGHLIN, WILLIAM B. McLAUGHLIN,
E. KIRBY McLAUGHLIN, DAVID C. GORDON, JOHN
H. FOWLER and DAVID FOWLER, Adm'rs of ROB-
ERT FOWLER, and others.

*Construction of a Will—What will pass under a Gift of a*
*Balance of Money—Extrinsic Evidence inadmissible as to a*
*Testator's Ignorance of his Ownership of property that would*
*pass under the Residuary Clause of his Will.*

A. K. B. owned an annuity of $2200 *per annum* for life, payable to her
in money. At the time of her death, there was due to her a propor-
tion of this annuity amounting to $1002.22. A. K. B. died in
November, 1866, leaving a will in which, after giving pecuniary
legacies amounting in all to $600, she declares: "It is my wish
that after the payment of my debts and funeral charges, should
there be a balance left in the hands of my executor to be herein-
after named, that said balance of money shall be equally divided
between my two children E. S. and R. B." The testatrix left sur-
viving her five grand-children, the children of a deceased daughter,
who are not named in the will. At the time of making her will,
the testatrix was entitled, under the residuary clause of the will of
her late husband, as the same was construed after her death by
this Court, to a valuable share or interest in the buildings and
grounds constituting Barnum's Hotel property. HELD:

That the will operated only to dispose of the money belonging to the
testatrix, arising from her annuity, and that she died intestate of all
her interest and estate in the hotel property.

It would be a dangerous doctrine to establish, and one without prece-
dent, that, where the language of the will is plain, and the residuary
clause, in terms, disposes of the whole estate, and there are no
qualifying words in any part of the will, extrinsic evidence may be
introduced to show that the testator did not know that certain

property which he owned, actually belonged to him, for the purpose of restricting the natural meaning and operation of the will; such evidence would clearly be inadmissible.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Edward Otis Hinkley,* for the appellant.

In examining the residuary clause several things are to be noticed. The word *"balance"* occurring twice. The word *"money"* as connected with the word *balance.* The words *"after the payment of my debts and funeral charges."* The words *"left in the hands of my executor."* There is no word indicating *time, place or circumstance,* as a description of the subject of the gift, other than the words just named. There is no designation of the things, whether *in possession* or *in action.* The clause is the *last clause* in the will in position. It is the only *residuary* clause, as there is no other clause residuary in its terms or in effect. There are, in the preceding clauses, *no gifts of any thing but money;* no words whatever describing any property, or leaving any means for application of the principle *noscitur a sociis.*

These several circumstances have been adverted to and made the ground of decision in many cases. The word *balance* is construed in *ex parte Artz,* 9 *Md.,* 65, where the words *"balance of my property,"* were held to dispose of the whole of the estate; so *in re Miller,* 48 *California,* 165; 17 *Am. Rep.,* 422, the words *"the balance of my money,"* were held to include both real and personal estate. In *Smith vs. Davis,* 1 *Grant, Pa. Cases,* 153, the words "the remainder or *balance of money* that may be left after paying

my just debts and funeral expenses," passed the residue. In *Paul vs. Ball,* 31 *Texas,* 10, the words *"the remainder of money* I may have at the time of my decease," passed the residue. In *Falkeron vs. Chitty,* 4 *Jones' Equity,* 244, the words "all the rest and *residue of my money,"* were held to include bank stock, notes and bonds. In *Morton vs. Perry,* 1 *Metcalf,* 446, the words "all the money left at his decease," passed promissory notes. See also, 2 *Redfield on Wills,* 427; 2 *Williams on Executors,* 1025; *Jarman on Wills,* ch. 24; *Hawkins on Wills,* ch. V, *p.* 51, &c.

The circumstances of debts and funeral expenses being mentioned is made in several of the cases the ground of decision that the whole residuary personal estate passed under the word *money;* because those debts and expenses were properly payable out of the whole personal estate, whether money or other things. These cases are mentioned in *Hawkins.*

In *Page vs. Young,* L. R., 19 *Eq.,* 501. the words "any small sum remaining in the bank after my funeral expenses have been paid," held the whole balance passed. In *Rogers vs. Thomas,* 2 *Keen,* 8, the words "all which may remain of *my money* after lawful debts and legacies are paid," passed the residue. In *Dawson vs. Gaskoin,* 2 *Keen,* 14, the words, "whatever remains of money," passed the residue; and *Gosden vs. Dotterill,* 1 *Mylne & Keen,* 56, is distinguished. In *Kendall vs. Kendall,* 4 *Russell,* 360, the words were, "all moneys, goods, &c., my property, which may remain after paying the charges incidental to my funeral, and such debts as I may owe at my death;" and Sir JOHN LEACH observed that "the mention of debts and funeral expenses afforded a strong indication that the testator considered himself as disposing of that property which, by law, was subject to those charges, viz: his general personal estate."

In *Stocks vs. Barre, Johnson's Rep.,* (*English,*) 54, the words were, "any *money that may remain* after the pay-

ment of my debts." Vice-Chanceller Sir PAGE WOOD said: "In this case the general rule of construction must prevail, viz., that, where there is no other gift of the residue of the testator's personal estate, and there is a bequest of any '*money*' which may remain after the payment of his debts, the Court must construe the word '*money*' as including the general residue of the personal estate, not specifically bequeathed, and which by law is liable to the payment of his debts." In *Gusvenor vs. Durston*, 25 *Bevan*, 19, the words "remaining sum of money after debts and funeral charges paid," were held to be a *general description* of the personal estate. In *Legge vs. Askill*, 1 *Turner & Russell*, 265, the words "money left after payment of funeral expenses," were held to carry the residue of the personal estate. See also *Boys vs. Morgan*, 3 *Mylne & Craig*, 661; which refers to *Legge vs. Askill*, 1 *Turner & Russell*, 265, (*note;*) *Nevinson vs. Lady Lennard*, 34 *Beavan*, 490.

The case of *Stocks vs. Barre, Johnson's Cases in Chancery*, (*English*,) 54, would seem to be conclusive against the effect of *extrinsic evidence* of knowledge of testator of what he owned, when the words of the will clearly show an intent to create a *residuary clause*, for then whatever rightly falls within the meaning of the words must pass. There is no ambiguity. See also, *Mann vs. Mann*, 1 *Johnson Ch.*, 234, *N. Y.*; *Cooke vs. Oakley*, 1 *Pecre Wms.*, 302; *Cole vs. Ensor*, 3 *Md.*, 446; *Darrington vs. Hambleton*, 36 *Md.*, 446; *Charter vs. Charter*, 7 *H. of L.*, 364.

Suppose a man should die in ignorance that his father had died the day before, whereby he had become entitled to certain land, could that circumstance be given in evidence to defeat title, under a devise in these words, "I give all my estate?" Such a doctrine, would subvert the plain language of our Code, Art. 93, sec. 309, Act 1849, ch. 229, declaring that "all real estate which the testator

had at the time of his death," should pass by his will; and the law was so before as to personalty. *Walston vs. White*, 5 *Md.*, 304.

In *Jarman on Wills*, ch. *XIII*, the cases of *Doe vs. Brown*, 11 *East*, 441, and *Doe vs. Oxenden*, 3 *Taunton*, 147, show that devises cannot be *enlarged* by extrinsic evidence, if the devise is good as it stands; but here is an attempt to *diminish* the meaning of words. The principle is the same: it cannot be done.

The words of this will are, "*money in the hands of my executor.*" The words certainly cover all the money brought into this case. It is plainly and unequivocally *money in his hands*. The *balance* of that, after making certain payments, cannot be turned into an ambiguity by simply saying there are two balances, or by any extrinsic evidence of the want of knowledge of the testatrix of the several items which would go to make up her whole estate, and thus determine the precise amount of this balance.

If it can, in any case, be held that a want of knowledge of the ownership of a *particular thing* can be shown to defeat a legacy otherwise good, can that doctrine be stretched so far as to say that *money*, which the testator did not know would come into her estate, shall be segregated from the *other money* left in the hands of her executor, so that it shall not pass, when the testatrix has expressly given "*the balance of money left in the hands of her executor, after payment of debts and funeral charges,*" to two of her children. *Wigram on Wills*, by *O'Hara*, *Introduction pages IV, XII, XIII, Rules 23, 25, 26, 28 and 30, and pages 9, 53, 54, 66, 97, 100, 101, 110, 112, 131, 134, 153, 154, 179, 180, 182, 212, 240, 244, 249, 259, 260, 267, 270, 286; Cotton vs. Smithwick, 66 Maine, 365; Miller vs. Springer, 70 Pa. State, 273; Aspden's Estate, 2 Wallace, Jr., (Ct. Ct.,) 439 and 449; Brown vs. Langley, 2 Eq. Abr., 416, pl. 14, and 8 Vin. Abr., 197, pl. 36.*

*Thales A. Linthicum* and *George Hawkins Williams*, for the appellee, Augustus K. Barnum.

The appellee submits that the testatrix did not intend to make any disposition of anything by this will, other than the small sum of money belonging to her at the time of her death, and under said will nothing was intended to pass to the legatees but the pecuniary bequests to them respectively.

There is nothing in the context of the will which authorizes such a construction of the word " *money,*" as to make it comprehend and embrace any general residue, or particularly the testatrix's property in Barnum's City Hotel. She does not undertake to dispose of the residue of her property and estate under this last clause, but confines the gifts therein to Mrs. Stannard and Richard Barnum to " *said balance of money,*" as should remain in her executor's hands after the satisfaction and payment of the legacies and debts and funeral charges out of the money she had at the her time of her death. She did not know that she had any interest or property in the hotel, but on the contrary she believed that she had no such interest or property, and during the long litigation in the *Barnum Case* she disclaimed, and continually disclaimed any interest therein other than that which ended with her life.

The last clause of the will, standing by itself, or taken in connection with the whole will, is not sufficient to pass any interest in any other property or estate which the testatrix may have owned at the time of her death, and such clause can only pass what is therein called "money." Such is the plain intention of the testatrix, and there is nothing in the context of the will which calls for or justifies the extension of the term "money" to that which is not money, but an unascertained interest in property. *Gosden vs. Dotterill,* 1 *M. & K.,* 56; *Hotham vs. Sutton,* 15 *Ves.,* 319; *Collins vs. Collins, L. R.,* 12 *Eq. Ca.,* 455; *Enohin vs. Wylie,* 10 *H. L. Ca.,* 1; *Lowe vs.*

*Thomas,* 5 *D. M. G.,* 315; *Cook vs. Oakley,* 1 *P. Wms.,* 302; *McChesney vs. Bruce,* 1 *Md.,* 344; *Ensor vs. Coale,* 3 *Md.,* 446; *Walters vs. Walters,* 3 *H. & J.,* 204; *Hamilton vs. Darrington,* 36 *Md.,* 434; *Willis vs. Plaskett,* 4 *Beavan,* 208; *Rea vs. Twilley,* 35 *Md.,* 409; *Mann vs. Mann's Executors,* 1 *Johnson's Ch. R.,* 237; *Hastings vs. Hane,* 6 *Simon,* 67; *Ommanney vs. Butcher,* 1 *Turner & Russell,* 260.

Cases can be cited, especially English cases, where Courts, in construing wills, have given to this word a larger meaning than literally belongs to it. Whenever this has been done, each case, closely read, shows that it was because the context required it; but it is insisted that even no English case can be cited to go the length necessary here to give the word any wider meaning than properly belongs to it in ordinary use, so as to make this will pass as *money* that which it must be conceded was in no sense *money.* But in England the executor, unless otherwise by the will expressly prohibited, must convert everything into money—that is his duty—and that is the key-note to all the English cases, and it must largely enter into the consideration of every English case.

In Maryland the rule is the reverse; the policy of our testamentary system is the exact opposite; and if an executor here, without special reason, reduces the estate to money, he commits a breach of duty. *Evans vs. Iglehart,* 6 *Gill & J.,* 192–3.

Premising then that the construction of every will depends upon its own language, and that very little aid can be derived from the construction which other and different wills have received, (*Clarke vs. Denison,* 33 *Md.;* 93,) it is insisted on the part of the appellee, that whilst it is the intention of the testatrix that must govern and have effect, yet, that "intention is to be developed by the light of surrounding circumstances," and that the Court must put itself in the place of the party making the instru-

ment. *Cook vs. Oakley,* 1 *P. Wms.,* 302; *Taylor vs. Watson,* 35 *Md.,* 524; *Darrington vs. Hambleton,* 36 *Md.,* 444.

And extrinsic evidence here is admissible to show what the testatrix meant by the words, balance of money. And it is to be remarked thereby, not to give a wider meaning; not to raise a latent ambiguity in the meaning of the words; but to show that Mrs. Barnum, by the word *money,* meant strictly *money.* And the surrounding circumstances are resorted to only to show that she meant that, and could not, in the nature of things, have meant anything else. We do not divert the word from its true ordinary meaning, but we strive to confine it to that, and to prevent its application to anything else. *Hawman vs. Thomas,* 44 *Md.,* 43; *Allen vs. Allen,* 18 *Howard,* 393; *Warner vs. Miltenberger,* 21 *Md.,* 264; 1 *Greenleaf's Evidence, secs.* 286 *to* 290; *Mann vs. Mann's Ex'r,* 1 *Johns. Chy.,* 237.

*David Fowler,* for the appellees, the administrators of Robert Fowler, and others.

If the testatrix did, in truth, intend to dispose of her interest in the hotel property, why did she express a doubt of the existence of a balance after the payment of a few small legacies, funeral charges and debts, amounting altogether to about one thousand dollars, and speak of her whole estate as consisting of "money" in the hands of her executor? It must be remembered that no actual sale of the hotel property was made until the 26th May, 1870, about four years after the death of the testatrix. But, it is contended, that the will of David Barnum directed that the hotel property should be sold, and that therefore the property was converted into "money" at the death of David Barnum, and was money when the testatrix executed her will. This Court has determined, however, that said hotel property was, at David Barnum's death in 1844, *converted in the manner*

*directed by his will;* that is to say, into mortgages, ground rents, United States, or Baltimore City bonds, "and until. the property was actually sold (in 1870,) it stood in the place of the investment of the proceeds." 42 *Md.*, 307, 308, 309.

There is nothing ·either in the will, "the surrounding circumstances," nor "the condition and situation" of the testatrix, which shows that she used the word "money" in any other than its ordinary meaning. In *Mann vs. Mann's Ex'rs,* Chancellor KENT, in construing a will, says, "'money' means gold and silver, or the lawful currency of the land." *Mann vs. Ex'rs of Mann,* 1 *Johnson's Ch.,* 234.

BARTOL, C. J., delivered the opinion of the Court.

The bill in this case was filed by S. H. Tagart, executor, to obtain a judicial construction of the last will of Mrs. *Ann K. Barnum,* and to have distribution of her estate made under the direction of the Court.

The will is as follows; *omitting the introductory clause:*

*Item.* I give to each of my grand-children David Barnum and Kirby Barnum, children of my deceased son Augustus Barnum, the sum of one hundred dollars.

*Item.* I give to my son Richard Barnum, the sum of two hundred dollars.

*Item.* I give to my daughter Eliza Stannard, the sum of two hundred dollars.

*Item.* It is my wish that after the payment of my debts and funeral charges, should there be a balance left in the hands of my executor, to be hereinafter named, that said balance of money shall be equally divided between my two children Eliza Stannard and Richard Barnum.

She then appoints ·S. H. Tagart, executor.

The will was executed in October 1866, and admitted to probate November 28th 1866; the testatrix died Novem-

ber 14th.   The contest in this case is as to what property and estate of the testatrix passes under the last clause of her will.

It appears from the record that the estate which has come to the hands of the executor, arose and was derived in this way:

1st.   The testatrix owned an annuity of $2200, *per annum* for life, payable to her in money.   At the time of her death there was due to her a proportion of this annuity amounting to $1002.22.

2nd.   A controversy was then pending with regard to the construction of the will of *David Barnum*, her deceased husband, made in 1843 and admitted to probate in 1844.   This controversy was finally determined by the decision of the Court of Appeals, made after her death, in December, 1866, (*Barnum vs. Barnum,* 26 *Md.,* 119,) whereby it was decided that the first clause of the will was void and inoperative, and the result of the construction of the will then established, was that there fell into the estate of the widow, the testatrix, a valuable share or interest in the hotel property.   This property was sold in 1870, and there came into the hands of Mr. Tagart, the executor, from the proceeds of that sale, the sum of $35,180.79, as appears by the *first account* of his administration passed on the 7th day of May 1877.   Of this sum, there remains in his hands after deducting allowances for disbursements, &c., the sum of $26,370.59, all of which are proceeds arising from the sale of the *hotel property.*

The appellant contends that this is embraced in, and passes under the last clause of Mrs. Barnum's will.

While the appellees maintain that the will operates only to dispose of the sum of $1002.22 belonging to the testatrix *in money,* at the time of her death, and cannot be construed as embracing her share or interest in the hotel property.

29                    v. 51.

The testatrix left surviving her five grand-children, the children of her deceased daughter Mrs. McLaughlin, who are not named in the will.

When we read this instrument, it seems to be impossible to resist the conviction, that the testatrix had in her mind only the sum of money arising from her annuity, and intended only to dispose of that sum. She gives small pecuniary legacies to her son, and daughter and two of her grand-children, amounting to $600, and then she expresses the wish "that after the payment of her debts and funeral charges, *should there be a balance left in the hands of her executor, that said balance of money shall be equally divided between her two children, Eliza Stannard and Richard Barnum,*" to whom she had, in the former part of the will given small pecuniary legacies.

By the agreement of counsel, the proceedings in the case of *Barnum vs. Barnum,* before referred to, are allowed to be read in evidence subject to exception, " and it is further admitted that at every stage of said controversy and down to the time of her death, the position of the testatrix, as to the matters embraced therein, was as set forth in her answers therein filed, adopting those of the McLaughlins, and that it does not appear that she ever departed therefrom during her life." Those answers show that she repudiated and resisted the attempt to impeach the validity of the first clause of her husband's will, and always protested that she had no interest, share or estate in the *hotel property* devised by the will, such as was by the subsequent decision of the case, (made after her death,) ascertained to have devolved upon her under the will.

These facts justify the inference that she did not know, when she executed her will or at any time thereafter, that any estate or interest in the hotel property belonged to her, except the annuities for life charged thereon by the first clause of her husband's will; and the appellees rely

upon that inference, in aid of the interpretation of her will, arguing that if she did not know that she owned an interest or share in the hotel property, she cannot be supposed to have intended to dispose of it by her will, citing *Cooke vs. Oakley*, 1 *Pre. Williams*, 302.

There the will under consideration was made by a person at sea, and contained, after certain specific gifts of chattels, the words "*and all things not before bequeathed.*" The testator had succeeded to considerable leasehold estates, by the death of his father of which he was ignorant, and the question arose whether these leaseholds passed under the general words, "*all things not before bequeathed.*" In the argument of counsel it seems, much stress was laid upon the fact of the ignorance of the testator of his father's death and of his ownership of the leasehold estates. The Master of the Rolls decided that they did not pass under the will; but made no reference to the subject of the testator's ignorance. We think with Mr. Jarman, that the decision in *Cooke vs. Oakley*, rests upon the familiar rule of interpretation "*ejusdem generis,*" or "*noscitur a sociis;*" that is to say, because it appeared from other parts of the will, and especially from the context, that the general words "*all other things not before bequeathed,*" clearly meant things or property of the same kind as was particularly mentioned, therefore they could not be properly construed to embrace or refer to the leasehold estates belonging to the testator at the time of his death. We do not think the case of *Cooke vs. Oakley*, can be relied on as authority for any other doctrine. It was cited in *Cole vs. Ensor*, 3 *Md.*, 453, and in *Hamilton vs. Darrington*, 36 *Md.*, 446. But in neither of those cases was it relied on as establishing any other doctrine than that before stated. Many cases of the highest authority have held that property will pass under a will, although the testator was ignorant of the fact of his ownership. It would be a dangerous doctrine to establish, and one with-

out precedent, that where the language of the will is plain, and the residuary clause, in terms, disposes of the whole estate, and there are no qualifying words in any part of the will, you may introduce extrinsic evidence to show that the testator did not know that certain property which he owned actually belonged to him, for the purpose of restricting the natural meaning and operation of the will; such evidence would clearly be inadmissible.

We return to an examination of the terms of the will, and the only question is whether the words in the last clause operate to pass the interest or estate of the testatrix in the hotel property.

In construing this clause we must look at the whole will, and read it in the light of the circumstances in which the testatrix was placed, and of the nature of her property and estate.

It must be observed that the testatrix after giving the few pecuniary legacies, amounting in all to $600, directs that *if there should be a balance* of money left after the payment of her debts and funeral charges, the same should be equally divided between her two children.

The administration account shows that she owed no debts except the bills of the physician and nurse, amounting to $100, and a debt of $100 due G. D. Clarke. The language of the will, expressing doubts whether there would be any balance left in the hands of the executor, indicates that she had in her mind and intended to dispose of only the amount of her annuity then due to her in money, and did not intend her will to operate upon any interest or estate she might have in the hotel property. And this conclusion becomes irresistible when we see that the last clause is not a gift of the general residue of her property or estate; but is in its terms only a gift of *a balance of money* remaining in the hands of the executor. In point of fact, as we have before stated, the testatrix, at the time of making her will, was entitled under the resid-

nary clause of the will of her late husband, as the same was subsequently construed, to a valuable share or interest in the buildings and grounds constituting "Barnum's Hotel" property, and the question is presented whether under a gift of "a balance of money" the testatrix's estate in the hotel property will pass.

The question as to the construction and effect of a bequest of money or balance of money, has often arisen; many cases have been cited in argument, they will be found collected in 1 Jarman, 703m, and in 2 Redfield, 111, and notes.

In Gosden vs. Dotterill, 1 Myl. & K., 56, there was a gift of "the rest of my money." It was held by Sir John Leach, M. R., that under this bequest, stock belonging to the testator did not pass.

In that case it was said to be established by the authorities, that the term "money" will not pass stock, unless there is in the will some explanatory context. A similar decision was made in Lowe vs. Thomas, 5 De G., McN & G., 315, where the bequest was of "all my money," it was held, that stock did not pass.

And in Collins vs. Collins, L. R., 12 Eq. Ca., 455, decided in 1871. Where the words of the will were, "As for my worldly goods and chattels I bequeath them as followeth:" The testator then gave several pecuniary legacies, and among the rest, to his daughter S. a legacy of £3000. He also bequeathed to his daughter S. "all things in the house remaining, and all moneys, both in the house and out of it," and made no express residuary bequest.

"At the time of his death, testator had moneys in his house, at his bankers, and at a savings bank. He had also due to him arrears of a superannuation allowance, and a sum for funeral expenses from a friendly society; as to all which there was no question.

"He had besides some shares in a building society, and some consols, standing in his own name." It was held,

that the shares and stock did not pass under the bequest of "all moneys, both in the house and out of it."

On the other hand; in *Dawson vs. Gaskoin*, 2 *Keen*, 14, Lord LANGDALE said the word money may be so used in a will as from the whole context to show that testator meant to pass stock, and in that case he held, that such intention clearly appeared; and Sir JOHN LEACH, M. R., in *Kendall vs. Kendall*, 4 *Russell*, 360, said, "it is true, that upon the whole context of particular wills, it may be clear, that stock was not intended to pass, and therefore will not pass by any of the words here used; but it is equally true, that upon the whole context of other wills, stock may pass by any one of the words here used, except the word 'clothing.' In that case the words were '*all moneys, goods, chattels, clothing, &c., my property.*'"

In *Stocks vs. Barre, Johnson's (Eng. Ch.) R.*, 54, it was held by V. C. Sir PAGE WOOD, that a bequest of "any money" which may remain after payment of testator's debts, in the absence of any other bequest of the residue of testator's personal estate and effects, included the general residue of the personal estate not specifically bequeathed, and which by law is liable to the payment of testator's debts. In that case it was held, that such a bequest of money, passed the testator's reversionary interest in a sum charged on real estate by an indenture.

The case of *Stocks vs. Barre*, has been much relied on by the appellant in argument, and the reasoning of the Vice-Chancellor, has been supposed to establish as the proper construction of the will before us, that the gift of *the balance of money*, after having provided for the payment of debts, is equivalent to a general residuary devise, and carries the whole residue of the estate of the testatrix, not before disposed of. We cannot so construe this will. It has been correctly said, that "in the construction of wills, the object of the Court is to give effect as far as it can, to the real meaning of testators."

Here the bequest is simply of "*a balance of money.*" The context shows, that the testatrix meant to dispose of only what belonged to her consisting of money, and the language of the will does not support the theory of the appellant, that the testatrix meant by those words to dispose of her interest and estate in the hotel property. Such an interest and estate will not ordinarily pass under a bequest of "money." *Mann vs. Ex'rs of Mann,* 1 *Johns. Ch. R.,* 231. There is nothing in the context to show, that the testatrix used the word money in any other than its customary and popular sense, and to extend its meaning, so as to embrace her interest in the hotel property would be doing violence to the real intent of the testatrix.

In our opinion, the will operates only to dispose of the money belonging to the testatrix, arising from her annuity, and that she died intestate of all her interest and estate in the hotel property. We therefore, on this question, concur in the opinion of the Circuit Court.

Objection has been made by the appellant to the terms of the decree, whereby an account is directed to be taken of all the moneys which have come to the hands of the executor, arising from the sale of the hotel property.

Whereas, the executor only brought into the Circuit Court the balance of the same remaining in his hands, a portion thereof having been paid out and disbursed by him, and allowed by the Orphans' Court, as shown by his administration account, and exhibited with his bill of complaint.

In the answers of the respondents, no question is made with respect to the payments and disbursements by the executor, as stated in his account, except, that the administrators of Robert Fowler, deceased, who was assignee of Augustus McLaughlin, deceased, allege in their answer, that "the executor has in his hands a much larger sum for distribution, than the sum mentioned in his account." And in the answer of Augustus K. Barnum,

Stannard *vs.* Barnum, *et al.*

it is claimed, that the pecuniary legacies are not payable in any part out of the moneys arising from the sale of the hotel.

No proof has been adduced showing errors in the administration account, and its correctness was not questioned in the argument; nor were any of the disbursements made by the executor, and allowed by the Orphans' Court, alleged to have been erroneously allowed.

So far as appears from this record, the account of the executor exhibited with the bill is correct, and the sum for distribution is the balance thereby shown to be in his hands. An examination of the account, shows that the sums paid on account of the pecuniary legacies were no more than what remained of the cash received from the annuity, after the payment of debts, funeral expenses and commissions, and that no part of the money arising from the sale of the hotel has been applied to the payment of the pecuniary legacies. We conclude, therefore, that the decree below is erroneous, in so far as it directs an account to be taken of all the moneys arising from the sale of the hotel, and that the true amount for distribution is the balance shown by the account of the executor to be in his hands, viz: the sum of $26,370.59.

The decree of the Circuit Court will be affirmed in part, and reversed in part, and the cause will be remanded, to the end that an account be taken, and distribution made amongst the parties entitled according to the views hereinbefore expressed, the costs in this Court, and in the Court below to be paid out of the fund.

*Affirmed in part, and*
*reversed in part and*
*cause remanded.*

(Decided 17th June, 1879.)