AUGUSTINE J. DALRYMPLE *vs.* MARIE E. GAMBLE and others. MARGARET R. HARRISON and FANNY A. DALRYMPLE *vs.* SAME.

*Validity of Will—Decision in State of Domicil of Testator— Estoppel—Property not known to Testator, passing under his Will.*

Where the validity of a will, has been finally established by the decision of a Court of competent jurisdiction in the State of the domicil of the testator, the parties to that case are estopped from raising the same question again in a suit in another State.

A testator by his will, executed on the 21st of August, 1881, in the State of California, devised his ranch, his interest in certain lots, and all his personal property, worth about $1100, to H. in case his then sickness should terminate in his death. He died on the 22nd of November, 1881. Between the execution of the will and the death of the testator, a brother of the testator died in Baltimore intestate, leaving a large personal estate, the testator's distributive share of which amounted to about $30,000. Of this, however, the testator had no knowledge. HELD :

That the terms of the will " all my personal property," were sufficient to embrace the testator's distributive share of his brother's estate, and the same passed under the will, in conformity with the rule that, as to personal property, a will speaks and takes effect from the death of the testator.

APPEALS from the Circuit Court of Baltimore City.

The Circuit Court decreed that it had been established by the proceedings in the Courts of the State of California, that William H. Dalrymple did die of the sickness from which he was suffering at the time of the execution of his will, and that the condition upon the happening of which said will was to operate, was in fact fufilled; and that the question of whether or not the said William did so die from said sickness was *res judicata,* and could not be opened in

this Court; and further that under the true construction of said will, it operated to pass to Marie Elizabeth Hatch, now Gamble, the legatee named therein, all the personal property of which the said William was possessed, or to which he was entitled at the time of his death, whether the same was in the State of California or in the State of Maryland, including the distributive share in the personal estate of Edwin A. Dalrymple, deceased, mentioned in these proceedings, to which the said William became entitled on the death of his said brother Edwin, and that the said distributive share under said will passed to the said Marie Elizabeth Hatch, now Gamble, and she was entitled to the same. From this decree these appeals have been taken. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Julian I. Alexander*, and *S. Teackle Wallis*, for the appellants.

*J. Southgate Lemon*, and *Albert Ritchie*, for the appellees.

MILLER, J., delivered the opinion of the Court.

The object of the bill in this case is to obtain from the Court a construction of the will of William H. Dalrymple, who died in California on the 22d of November, 1881. The testator went to California from Baltimore in 1849, and was, thereafter, a citizen and resident of that State. At the time of his death, and for a number of years before, he lived upon his ranch in Marin County, about twenty miles from San Francisco, where the will in question was executed, on the 21st of August, 1881, and is as follows:

"DALRYMPLE RANCH, 21*st August*, 1881.

"This is to certify that in case my present sickness should terminate in my death, it is my will that *my ranch*

*and all my personal property* shall be inherited by Marie Elizabeth Hatch. Witness my hand.

"Witnesses:               W. H. DALRYMPLE."

  Geo. S. Riggs,
  Jno. Hanna,
  Geo. R. Turner."

"I further will that my four lots, located on Gift Map, number one, and one lot on Dolores, corner of Grove Street, San Francisco, now incumbered by mortgage to Peter Alferitz, when unincumbered, shall likewise go to above named Marie Elizabeth Hatch. Witness my hand at Dalrymple Ranch, this twenty-first day of August, eighteen hundred and eighty-one.

"Witnesses:               W. H. DALRYMPLE."

  Geo. S. Riggs,
  Jno. Hanna,
  Geo. R. Turner."

At the time this will was executed and at his death, the testator's ranch and his interest in these lots, were worth about $1000, and his personal property in California about $100. But he had living in Baltimore two brothers and two sisters, and, on the 30th of October, 1881, after the will was made, and twenty-three days before the testator's death, one of these brothers, the Rev. Edwin A. Dalrymple, died intestate, leaving quite a large personal estate, the testator's distributive share of which amounted to about $30,000. Shortly before his death the testator had read in the newspapers a notice of the death of his brother in Baltimore, but there is nothing to show that he knew that his brother had died intestate. His surviving brother and sisters in Baltimore were informed of the death of the testator shortly after it occurred, and were at the same time advised that his will would probably pass to the legatee his distributive share of his deceased brother's

estate, and that there was good reason for contesting the validity of that will upon the ground of mental incapacity and undue influence. They, thereupon, filed a *caveat* thereto on these grounds in the California Probate Court. The contest was warm and protracted, and the record of it, which is in evidence before us, shows that there was not only reasonable but very strong- grounds for instituting it. The result, however, of that contest was an order of the Probate Court admitting the will to probate, which upon appeal was affirmed by the Supreme Court of that State. *Estate of Dalrymple*, 67 *Cal.*, 444. The two main propositions for which the`appellants in the present case, contend, are.:

1st. That this will is a conditional one, and that the sickness therein referred to, did not, in fact, terminate in the testator's death, and therefore the will is wholly inoperative.

2nd. That under the circumstances of the case the will operates only upon the personal property which the testator owned at the date of its execution.

1st. As to the question involved in the first proposition, our opinion is, that it has been conclusively settled by the decision in the California case, and is no longer open for discussion or decision here. According to the statute law of that State, it is expressly provided, that "a will the *validity* of which is made by its own terms conditional, may be *denied probate* according to the event with reference to the condition." 1 *Cal. Code, sec.* 6281. And with equal explicitness the power and jurisdiction to try and determine any question "substantially affecting the validity" of a will, are vested in the Probate Court. Issues involving such questions must, on request of either party in writing, filed three days prior to the day set for hearing, be tried by a jury summoned in that Court, and if no jury is demanded, the Court must try and determine the same. 2 *Cal. Code, secs.* 11,312, 11,313. The issues sub-

mitted to the jury in this California case involved simply the formal execution of the will, testamentary capacity, and undue influence; but in the course of the trial, evidence was fully gone into as to the nature and character of the disease of which the testator died, and the state and condition of his health from the date of the will to the time of his death. The jury found all the issues submitted to them in favor of the will. Upon this verdict, "and upon the evidence oral and written submitted by the parties," the Court determined that the decedent at the time he executed the will, "was sick and never thereafter fully recovered, but that said illness terminated in his death." This adjudication formed part of the order admitting the will to probate from which the appeal was taken. One of the grounds of error relied upon by the contestants before the Appellate Court, was that this issue was a material one directly raised by the pleadings, and not having been submitted to the jury it remained to be decided by the Court upon evidence directly addressed to the Court upon it; that the Court could not assume to decide it upon evidence taken before the jury upon other and different issues, without the consent of all parties to the proceedings; that the contestants never gave such assent, nor have they waived their right to offer new and additional evidence on such issue, or their right thereafter to present such an issue directly to the Court to be independently decided upon any and all competent evidence at their command. In disposing of this objection the Supreme Court said, *the action* of the trial Court "in finally making and entering its order or decree without allowing the contestants, at the time proposed by them, to have the issue tried whether or not the death of the testator had been the result of the illness under which he suffered at the time of the execution of the will, *was proper*. The testimony was ample to support the finding of the Court upon that point, and the contestants by not including it among the issues they first sub-

mitted to the jury, and upon which the jury found, *waived* such right, and it then *became the duty of the Court to consider the evidence and make a finding thereon."* 67 *Cal.,* 446. See also *Estate of Collins, Myrick's Prob. Rep.,* 73, as to the construction and effect of the same California statute law. We have then a definite and final decision of this question by a Court of competent jurisdiction in the State of the domicil of the testator, and in a case to which these *appellants were parties* contesting the validity of the will. In our judgment that decision is conclusive and the appellants are estopped from raising the same question again in this case. But even if it were still open and we were at liberty to decide it we could only do so upon the evidence before us, including that in the California record, and in our opinion the preponderance of such evidence is decidedly in favor of the conclusion reached by the California Court.

2nd. The second question was not decided in the California case and it is our duty to decide it now. This part of the case has been argued with exceeding ability by counsel for the appellants, but we find the language of the will too plain, and the rules of construction too stringent, to permit us to yield assent to their arguments. The testator says in effect, and in terms, I give, " my ranch *and* all my personal property" to Marie Elizabeth Hatch. Now with regard to personal property the rule has always been, that a will speaks and takes effect from the death of the testator, and the same rule has long since been made, by statute, applicable to real estate. We therefore take the law to be now well settled that a devise or bequest of all a testator's real or personal property in express terms, or in any other terms denoting his intent to dispose of all, will pass all the real or personal property which he could dispose of by will at the time of his death.

Under this rule, we think the terms in this will, *"all my personal property,"* are sufficient to pass the testator's distributive share of his brother's estate, unless their

obvious meaning, can, upon good and legal grounds be put aside or restricted, and held not to embrace this property. There is however nothing *upon the face* of the will to enable the Court to give it any such restricted construction. The words are as comprehensive as any that could be used. He does not say "my ranch and all my personal property *thereon*" nor "all my personal property in *California*." He makes no enumeration of articles, nor any bequest to any one else, so as to give the Court the slightest clue or ground for relying on the rule "*ejusdem generis*" or "*noscitur a sociis*."

If it be assumed that the will must be read in the light of the circumstances in which the testator was placed, and of the nature, amount and character of his property, still this does not permit the Court to change the language of the instrument, or put words into it which the testator has not himself used, or take out of it words which he has used. The will itself tells us that at the time it was written the testator was suffering from a sickness which he apprehended might terminate in his death, and in that event he willed his ranch, his town lots " and *all* his personal property " to this woman. Looking to outside circumstances, we find the personal property which he had about him and in his immediate possession of very little value, and that up to the time of his death he did not certainly know that he was entitled to any thing from his brother's estate. But let us suppose his brother in Baltimore had died intestate before this will was written, but that the testator was wholly ignorant of the fact, and had died himself immediately after executing the will; in such a state of case as that would this distributive share have passed by this will? To this we must give the answer we gave in *Stannard vs. Barnum,* 51 *Md.,* 451, where after full consideration of the authorities, we said: "It would be a dangerous doctrine to establish, and one without precedent, that where the language of the will is

plain, and the residuary clause, in terms, disposes of the whole estate, and there are no qualifying words in any part of the will, you may introduce extrinsic evidence to show that the testator did *not know* that certain property which he owned actually belonged to him, for the purpose of *restricting the natural meaning* and operation of the will." In the case supposed we think it clear the property would have passed to the legatee, by the plain terms of the will. The will would have disposed of *all* the personal property that *then* belonged to the testator, including that to which he was *entitled,* as well as that which he knew of and had in actual possession. And this being so, the *same terms* which would have been effective, to pass the property if the testator had been entitled to it when the will was written, *remained in the will,* speaking *from day to day* until the testator died ; and if therefore any effect is to be given to the rule that as to personal property a will speaks and takes effect from the death of the testator, we are constrained to hold that this property passed by this will.

The testator, though he had heard of his brother's death, made no change in his will, and we may say that we have found in the testimony in these records, nothing *coming from him,* to induce us to believe, much less to decide, that he would have changed it, if he had known the full amount he was entitled to from his brother's estate, or have made a different one if he had then first made his will.

In *Stannard vs. Barnum,* the terms of the will, as explained by the context, gave the Court the foundation for its decision. By the residuary clause there construed, the testatrix disposed of " *a balance of money* " that may be left in the hands of her executor, and the Court held upon this language and the context, that she thereby intended to dispose of what belonged to her *consisting of money,* and did not mean by such words to pass her interest or share in the Barnum Hotel property (real estate,) about which a litigation was then pending, and which was not

Dalrymple *vs.* Gamble, *et al.*

decided until after her death. "Such an interest or estate" said the Court, "will not ordinarily pass under a bequest of '*money.*'" 51 *Md.*, 452, 453, 455. Upon this subject no Maryland decision has gone any further than this of *Stannard vs. Barnum;* and in *Hambleton, et al. vs. Darrington, et al.*, 36 *Md.*, 434, the Court approved what was said by Lord ELDON in reference to the word "residue." "The safest course" said his Lordship, "is to abide by the words unless upon the whole will there is something amounting almost to demonstration that the plain meaning of the word is not the meaning of the testator." And in the cases referred to in other States and jurisdictions we find the same general rule prevailing, that where the meaning of the language of the will is plain, the Court of construction does not go outside to discover what the testator intended. *Schouler on Wills, sec.* 467.

In *Dunlap vs. Dunlap*, 74 *Maine*, 402, a distributive share to which the testator became entitled under somewhat similar circumstances, was held not to pass by the residuary clause of his will. There, however, by the clause relied on, the testator bequeathed to his niece "the remainder of the little property I shall have when I depart from this earth, a *brief schedule of which bequest follows*," and he then proceeds to schedule and enumerate the items and articles of which the "remainder" of his little property consisted. But in the will before us there is an entire absence of any such schedule or enumeration.

A good deal was said in argument as to the relations which existed between the testator and this legatee, but assuming them to have been as reprehensible and immoral as they have been pictured, still such immoral conduct, of which they were both equally guilty, did not deprive *him* of the power of making a will in her favor, nor *her* of the right to receive whatever property that will gave her. How far the will may have been the result of

undue influence growing out of such relations was a question that was raised and decided in the California case.

*Decree affirmed.*

(Decided 15th March, 1888.)

STONE, J., filed the following dissenting opinion:

I am unable to agree to that part of the opinion of the majority of the Court, determining that the Maryland property passed to the legatee under the will.

I fully agree that the law is correctly laid down in *Stannard vs. Barnum, et al.,* 51 *Md.,* 452, where the Court said:

"That where the language of the will is plain, and the residuary clause, in terms, disposes of the whole estate, and there are no qualifying words in any part of the will" you cannot introduce evidence to show that the testator was ignorant of property he then owned, for the purpose of showing that such property did not pass by the will. Public policy would forbid it.

And I equally agree to the further well known principle enunciated in the same case, that in construing any clause in a will, we must look at the whole will, and read it in *the light of the circumstances in which the testator was placed, and of the nature of his property and estate.*

The testator in this case did not own the property in Maryland at the time of the execution of the will, and therefore no question of ignorance or knowledge at the time of the execution of the will can arise. It (the Maryland property,) can only pass under the well known principle that the will speaks as of the date of the death of the testator, and that after acquired property will pass because the testator is *presumed so* to intend by leaving his will unrevoked.

But this presumption may certainly be rebutted by the terms of the will. If the terms of the will are doubtful or ambiguous, then they may be read in the light of the

circumstances in which the testator was placed, and of the nature of his estate. The nature of his estate and the circumstances under which the will was made, will not control the terms of the will, where these are plain and free from doubt, but these circumstances can well be relied on to explain and remove an ambiguity, and to throw light upon the intention of the testator, which is at last what every decision aims to do.

Now, I think no one could read this will on the day of its execution, and say that the testator intended to include in it any or all *after acquired* property. So far from that being the case, it was doubtful by the terms of the will whether the property, the testator then owned, would ever pass under that will, as, by its express terms, the will would not have been operative had the testator recovered from the illness under which he was then suffering. Before the will could operate upon the property the testator then owned, and indeed before it could be pronounced to be *a will,* it was absolutely necessary to prove, *aliunde* the will, that the testator did *not* recover from his then illness. The will, standing alone and *relying only upon its language,* could not be held operative. Before it could operate, it must be shown that the condition had happened, required by the testator himself, to make it a good will. Evidence *must be* gone into, and it must be read, if, as a will, it *is* read at all, "in the light of the circumstances in which the testator was placed," if the document before us is more than waste paper.

If it was necessary, absolutely necessary, to go into evidence, extrinsic the will, why not go into the whole evidence? Why not read it, in the language of Judge BARTOL, "in the light of the circumstances in which the testator was placed," and if so, I cannot think the conclusion doubtful?

The testator left his whole personal property to Mrs. Hatch, *only* on the condition that he died from his then

sickness. He *did not* leave it to her absolutely and for all time, unless he should change his mind and revoke his will. Does not this condition, prefixed to his will, show most conclusively, that the intention of the testator was directed only to his then *condition* and his *then possessions?* If we can conclude from the terms of the will and the situation of the testator, that such was his intention at the time the will was made, that intention must always prevail.

The testator certainly did not, and could not, intend to include in his *personal property*, property that he did not then own. He did not, and could not, know at the time he made his will, that he ever would receive any of this Maryland property. It was evident that he did not then intend to include it in the bequest to Mrs. Hatch. If she gets it at all, it will be under the rule of law, that the will speaks as of the day of the death of the testator. But this rule of law must yield, if, from the terms of the will and the surrounding circumstances, we can draw a different conclusion.

I think it is clear from this will that the testator only intended to devise the property he then owned, and the after acquired property did not pass.

(Filed 15th March, 1888.)