JOHN FRICK, Administrator, etc., vs. LILIAN FRICK, by Guardian ad Litem, and Others.

*Devise and Legacy—Restriction of General Terms—Balance of Estate—Devise of Land Contracted to be Sold—Evidence to Aid in Construction of Wills.*

In construing a will no evidence of the testator's instructions to the draftsman of the will; or of his declarations, is admissible to show his intention or to aid in the interpretation of the will.

A will takes effect as of the date of the death of the testator, and operates upon his property as then situated.

A bequest in general terms of all the testator's personal property may be qualified or restricted by expressions used in another part of the will.

If a testator devises to A. certain .lands and afterwards contracts for the sale of them, the devisee takes only the naked legal title, because the devise is revoked by the alteration of the estate. But if the testator has before making the will contracted to sell certain lands and then devises them by words comprehensive enough to embrace all his interest in them, including his interest in the purchase money, then the latter will pass to the devisee as well as the legal estate.

A testator gave a certain house and lot to his wife for life, remainder to his daugter L. for life. He also gave to the said L. all his personal property. He then provided that "as to the balance of my estate, my wife W. and my daughter L. are not to have any share of it, but is to be divided as follows," giving $10 each to four of his children, and directing the balance to be equally divided among four other children. These eight devisees were testator's children by a former marriage. At the time of the execution of the will the testator owned the house and lot referred to, a few dollars worth of chattels and a farm, which a few weeks prior thereto he had agreed in writing to sell to his son F. Under this agreement F. was to pay interest on the purchase money of $1,600 annually to the testator, and after his death F. was to pay the principal to the heirs according to the testator's will. Subsequently the testator executed a deed conveying the farm to F., and took from him a promissory note for $1,200 payable one year after date. This note was unpaid at the time of the testator's death. *Held,*

1st. That the general bequest of the testator's personal property to L. was qualified by other expressions used in the will.

2nd. That extrinsic evidence was admissible to show what the testator meant by the terms "balance of my estate."

3rd. That the money due for the farm which the testator had agreed to sell was the property referred to as "the balance of my estate;" that it was the testator's intention to exclude L. from any share in the farm or the proceeds thereof, and to give the same to his eight children by his former marriage in the proportions mentioned.

4th. That the circumstance that after the execution of the will the testator conveyed the farm and took a promissory note for the purchase money, was a mere change in the form of the indebtedness, and did not so change the subject of the gift to the eight children as to revoke it.

Appeal from a *pro forma* decree of the Circuit Court for Carroll County dismissing a bill filed by John Frick, administrator *c. t. a.* of John Frick, deceased. The will referred to in the opinion of the Court was as follows: "And as to my wordly estate and all the property, real, personal or mixed, of which I shall die, seized and possessed, or to

which I shall be entitled at the time of my decease, I devise, *bequith*, dispose as follows, to-wit: First, my will is that all my just debts and funeral expenses shall, by my executor hereinafter named, be paid out of my estate as soon after my decease as shall by them be found° convenient. Item. I give, devise and *bequith* to my beloved wife, Mary Frick, my house and lot situate in Smallwood, Carroll County, in the State of Maryland, containing seven acres, one rood and seven perches of land, more or less, called "Maddox Choice," to have and hold during her natural life, and after her .decease to my beloved daughter, Lillian Frick, to have and hold during her natural life; after her decease, to the Evangelical Lutheran Church, of which I am a member.

I also give to my said daughter, Lillian Frick, all my personal property, to have and hold forever.

And as to the balance of my estate, my wife, Mary Frick, and my daughter, Lillian, are not to have any share in it. But is to be divided as follows: To my son, John Frick, and Rufus Frick, Amelia Hyson and Caroline Block, in consideration of what they have already received, each the sum of ten dollars, the balance to be equally divided share and share alike between and among my other children, Philip Frick, Frank Frick, Louisa Baker and Sophia Nelson."

·The cause was argued before ROBINSON, C. J., McSHERRY, FOWLER, BRISCOE and BOYD, JJ.

*James A. C. Bond,* for the appellant.

*Francis Neal Parke,* for the infant appellee, submitted the case on brief.

BOYD, J., delivered the opinion of the Court.

The bill was filed in this case for the construction of the will of John Frick, who died in May, 1893. It was executed on the 4th day of February, 1890, and by it, after directing

all his just debts and funeral expenses to be paid by his executor out of his estate, as soon after his decease as be found convenient, the testator gave to his wife, Mary Frick, for life, his house and lot in Smallwood, Carroll County, and after her death to his daughter, Lillian Frick, for life, and after her death to the Evangelical Lutheran Church, of which he was a member. Then follow the provisions which we are asked to pass upon, viz: " I also give to my said daughter, Lillian Frick, all my personal property, to have and hold forever.

"And as to the balance of my estate, my wife, Mary Frick, and my daughter, Lillian, are not to have any share in it. But is to be divided as follows: To my son, John Frick and Rufus Frick, Amelia Hyson and Caroline Block, in consideration of what they have already received, each the sum of ten dollars, the balance to be equally divided, share and share alike, between and among my other children, Philip Frick, Frank Frick, Louisa Baker and Sophia Nelson."

Testimony was taken as to the surrounding circumstances of the testator, and on some other matters, the legal effect of which we will have occasion to refer to. The record discloses that when the will was executed the testator owned the house and lot in Smallwood, furniture and other goods and chattels afterwards appraised at $25.90, two small notes returned desperate, and a farm containing forty-seven acres, which he had on December 18th, 1889, sold to his son Frank by an unrecorded written agreement. It was therein agreed that Frank was not to pay for the property until after the death of his father, but he was to pay him annually five per cent. interest on $1,600.00—the consideration mentioned in the agreement—and " after the decease of the said John Frick, Sr., the said Frank A. Frick agrees to pay the heirs according to the last will and testament of said John Frick, Sr." Subsequently the senior Frick executed a deed to his son, and took a note for $1,200.00, payable one year after date (November 16th, 1891), with five per cent. inter-

est from date, signed by Frank and his wife. Mrs. Frick testified that the note was taken for $1,200.00, because Frank had improved the property with his own means. Lillian Frick is the only child by Mary Frick, who was the second wife of John Frick, Sr., and the others named in the will were his children by a former marriage.

We have thus referred to the testimony which shows what property Mr. Frick owned when he made the will, and explains the relationship of the beneficiaries under it to the testator, as it is not only the right but the duty of Judges, in construing wills, to put themselves in the place of the testators, as far as possible, for the purpose of ascertaining their intentions. We must discover such intention from the face of the will, but without knowing how the testator was situated, the meaning and application of his words would oftentimes be incomprehensible. We cannot, however, resort to extrinsic evidence to ascertain from the scrivener what the testator instructed or intended him to say as was attempted in this case, nor can we accept the declarations of the testator to establish his intention or to aid in the interpretation of the will as was settled in *Negro Caesar* v. *Chew*, 7 G. & J. 127; *Zimmerman* v. *Hafer*, 81 Md. 347, and other cases that might be cited.

Having before us therefore the facts and circumstances respecting the persons and property to which the will relates, we must seek to discover the meaning of the testator in the language used by him. The bequest to Lillian of "all my personal property" is sufficiently broad to include all personal property which the testator could dispose of at the time of his death, unless there be something elsewhere in the will to qualify or limit it. It has always been the law of this State that a will takes effect as of the death of the testator, so far as it affects personal property—and the statute many years ago adopted a similar rule for real estate. It was accordingly held in *Dalrymple* v. *Gamble*, 68 Md. 523, that the term "all my personal property" as used in that will passed the testator's distributive share in

the estate of his brother, who died intestate twenty-three days before the death of the testator, which amounted to thirty thousand dollars, although when he made his will he only had about one hundred dollars worth of personal property in California where he lived. That decision rested on the fact that *there was nothing in the will to restrict the term used*—" all my personal property "—and as the will spoke and took effect from the death of the testator, it included all personal property he owned at that time. In *Stannard* v. *Barnum*, 51 Md. 451, it was said : " It would be a dangerous doctrine to establish, and one without precedent, that where the language of the will is plain, and the residuary clause, in terms, disposes of the whole estate, *and there are no qualifying words in any part of the will,* you may introduce extrinsic evidence to show that the testator did not know that certain property which he owned actually belonged to him, for the purpose of restricting the natural meaning and operation of the will ; such evidence would clearly be inadmissible." In *State use of Dittman* v. *Robinson et al.,* 57 Md. 486, this Court in construing the will then under consideration held that where a testator gave to his wife, amongst other property, the bills receivable of which he should die possessed, absolutely, and two leasehold lots, for life, and between the dates of the execution of the will and his death the testator sold the lots and died without collecting all of the purchase money, the uncollected purchase money passed to the wife absolutely under the gift " bills receivable of which I should die possessed." But the Court said in passing on the question, " If there was anything in the will to indicate an intention to restrict the terms within a narrower compass, it might no doubt be done to carry out a manifest purpose of the testator."

We have thus selected a few of the many cases in this State to show that, in deciding this question, we have not overlooked the general principle that such a bequest as that made to appellee is broad enough to include all personal property of which the testator died possessed, if it stood

alone, but that we must also be guided by the further well
established doctrine that if there be anything in any part of
the will which restricts or qualifies the general term, the
latter must be so restricted and qualified, if it can be done
without violating some other principle of law or the mani-
fest intention of the testator.

Let us then see whether this gift to Lillian of all the tes-
tator's personal property in the one clause is restricted by
any other part of the will.   It is perfectly apparent that if
the appellee's contention be correct, the eight children of
John Frick by his first wife will take nothing.   It is equally
manifest from the face of his will, that he intended four of
them to have ten dollars each and the other four to have
*something*.   It is moreover perfectly certain that when he
made that will he did not intend his wife and daughter Lil-
lian to have all of his estate, for after giving them for life
the house and lot in Smallwood and the personal property
to Lillian, he distinctly said: "And as to the balance of my
estate, my wife, Mary Frick, and my daughter, Lillian, are
not to have any share in it."   If then Lillian, by our con-
struction of the will, gets all or any part of what her father
called "the balance of my estate," she will receive what he
expressly intended she should not have, and his other eight
children will be deprived of what he manifestly designed
they should have, so far as disclosed by the face of the will.
The will is peculiar because it not only undertakes to give
*something* to one set of his children, thus negativing the
idea that the other child and her mother are to have *that*
"*something*" whatever it may be, but he affirmatively said
that his wife and daughter Lillian shall not have it.

We are convinced from a careful reading and study of
the will, that the testator did intend, when he made it,
not only to give these eight children some part of his estate,
but to exclude Lillian from such part, and that such inten-
tion (to use the language of JUDGE MILLER in *Dalrymple* v.
*Gamble, supra*) "*remained in the will, speaking from day to
day until the testator died.*"   We are then brought face to

face with the question : Are there any principles of law in-
volved in the construction of this will which compel us
(sitting in a Court of Justice, where we cannot ignore the
law to avoid seeming hardship in particular cases) to take
from eight children of the testator that which we believe
was intended for them to give to another who in our opinion
was intended by the testator to be kept from it and that
too when our belief is founded on the terms of the will
itself?

In *Walston's Lessee* v. *White*, 5 Md. 304, LE GRAND, C. J.,
speaking for the Court, said: " Where the language of the
testator is plain and unambiguous, such language must
govern, and therefore extrinsic evidence is inadmissible to
show that he *meant* something different from what his lan-
guage imports ; but any evidence is admissible which,
in its nature and effect, simply *explains* what the testator
has written ; in other words, the question in expounding a
will is not what the testator's meant as distinguished from
what his words express ; but simply what is the meaning of
his words.    And extrinsic evidence, in aid of the exposition
of his will, must be admissible or inadmissible with refer-
ence to its bearing upon the issue which this question
raises."    Again on page 305 he quoted with approval
from *Wigram's Rules of Law*, that " for the purpose of de-
termining the object of a testator's bounty, or the subject
of disposition, or the quantity of interest intended to be given
by his will, a Court may inquire into every material fact re-
lating to the person who claims to be interested under the
will, and to the property which is claimed as the subject of
disposition, and to the circumstances of the testator, and of
his family and affairs, for the purpose of enabling the Court
to *identify* the person or thing intended by the testator, or
to determine the quantity of the interest he has given by his
will."    In *Warner* v. *Miltenberger's Lessee*, 21 Md. 272, the
above was approved, and it was held competent to show by
testimony derived from other parts of the will, and by ex-
trinsic evidence explaining the sense in which the testator

used the word *lot;* that it embraced a larger parcel of ground, and was not intended to refer to the small subdivisions designated as town lots on the plat of Ridgely's addition to Baltimore.

In *Hawman* v. *Thomas,* 44 Md. 43, in quoting from *Allen's Exrs.* v. *Allen,* 18 Howard, 393, it is said " That the Court may put itself in the place of the testator by looking into the state of his property and the circumstances by which he was surrounded at the time of making his will is true, but this is done only to explain ambiguities arising out of extrinsic circumstances, and not to show a different intention from that the will discloses."

We can therefore, under the authorities, look to extrinsic evidence to see what the testator meant by the expression " the balance of my estate." In doing so we find a farm standing in the name of John Frick, Sr., which he had sold to his son Frank, by an agreement dated December 18th, 1889, less than two months before the execution of the will; and we have already seen the terms of that sale. The agreement was in existence when the will was made, and the conclusion is irresistible that this was the property referred to in the will as " the balance of my estate ;" the testator then holding the legal title to the farm subject to the contract for its sale. The purchaser was in a position to enforce his purchase in a Court of Equity on paying the purchase money to those entitled to it by law, if the vendor had died intestate, or to " the heirs according to the last will and testament of said John Frick, Sr.," if he so provided. He did make such provision.

Excluding from consideration for the present the deed subsequently made, and the note given by Frank A. Frick and wife, we find from this extrinsic evidence which we have the right to consider for the purpose of determining " the subject of disposition," to ascertain of what the balance of the estate consisted, that the testator had an estate not previously disposed of in the will, viz., a legal estate in this farm subject to the agreement of sale. The term " estate " is sufficient

to pass by will the fee as well as other property. *Chamberlain* v. *Owens*, 30 Md. 447.

If, then, it was the intention of the testator to devise this farm, that clause of the will now under consideration passed at least the legal title. It has generally been held that if a testator devise lands and then contracts for the sale of them, the devisee takes the legal estate, *and only that*, in equity, by reason of the revocation of the devise by the alteration of the estate. But if he has previously sold the lands and then devises them by words comprehensive enough to embrace all his interest in them, including his interest in the purchase money, we can see no valid reason why the latter should not pass to the devisee as well as the legal estate. If A. devises Black Acre to B. after he had previously agreed by a binding contract to sell it to C., but neither conveyed it by deed nor collected the purchase money in his lifetime, it would seem difficult to work out of such devise an intention on the part of A. to simply give the naked legal title to B. and exclude him from all the really beneficial interest in the property, and such a construction is not required by the authorities— certainly not all of them. See *Wright* v. *Minshall*, 72 Ill. 584; *Woods* v. *Moore*, 4 Sanford (N. Y.) 579.

Whether or not there was a technical equitable conversion of the land into personalty by the agreement of sale, it is evident that the testator did not regard it as disposed of by the previous clause in his will and that it was his intention to exclude his daughter Lillian from any share in the farm or the proceeds of sale thereof. By the clause which follows the bequest of the personal property to her, he gave ten dollars to each of four of his children and the rest of the " balance " of his estate to his other four children. No effect can be given to that part of the will if we adopt the construction contended for by the appellee. It is the duty of the Court to so construe wills as to give effect to every part of them when possible without conflicting with some established principle of law.

That requirement is emphasized in this case by the fact that any other interpretation would disinherit eight out of the nine children of the testator when the ninth was already well provided for in other parts of the will. We therefore conclude that when this will was made the testator intended to leave to his eight children, in the proportions mentioned, the farm and the proceeds of sale thereof, and to exclude Lillian from them.

It only remains to determine whether his subsequent acts of executing a deed and taking the note changed this. Having clearly manifested his intention to exclude Lillian from participating in the purchase money, he did nothing that, under the circumstances of this case, can be deemed a change of purpose on his part, or a revocation of the gift to his other children. Having determined what was meant by " the balance of my estate," and being of the opinion that he excepted it (this farm and the proceeds of sale) from his bequest to her, the mere change of the form of indebtedness for the purchase money from the agreement to a note, did not so alter the subject of the gift as to revoke it. His intention to exclude Lillian from it, to repeat the above quotation, " remained in the will, speaking from day to day until the testator died." The will spoke as of the day of his death in respect to *that*, as well as to other parts of it, and we cannot decide that this note of $1,200.00 went to her, under the general bequest of the personal property, without obliterating from the will this subsequent clause, and refusing to obey the injunction of the testator that his wife and daughter Lillian were not to have any share in this fund, which we believe the testator referred to in the clause above quoted.

We are therefore of the opinion that under a proper construction of the clauses of this will presented to us for interpretation, the note of Frank A. Frick and wife is not included in the bequest to Lillian, and that ten dollars must be paid to each of the four children to whom that amount was given, and the balance should be equally divided between the other

four children mentioned in the will, after deducting such costs as it may be properly liable to. The rest of the personal property was bequeathed to Lillian.

It follows from what we have said, that the *pro forma* decree of the Court below must be reversed.

> *Decree reversed and cause remanded,*
> *the costs to be paid ont of the*
> *$1,200.00 fund.*

(Decided December 13th, 1895.)